2001 UT App 210

**BRIXEN & CHRISTOPHER ARCHITECTS, P.C., a Utah professional corporation, Petitioner and Appellee,**

v.

**STATE of Utah, Respondent and Appellant.**

No. 20000318–CA.

Court of Appeals of Utah.

June 28, 2001.

Mark L. Shurtleff and R. Wayne Klein, Assistant Attorney General, Salt Lake City, for Appellant.

Hardin A. Whitney, Moyle & Draper, and Robert G. Wing, Prince Yeates & Geldzahler, Salt Lake City, for Appellee.

Before JACKSON, Associate P.J., DAVIS, and THORNE, JJ.

## OPINION

JACKSON, Associate Presiding Judge:

¶1 The State appeals the trial court's grant of Brixen & Christopher, P.C.'s (Brixen) Petition to Quash Antitrust Civil Investigative Demand (Brixen's Petition). We re-verse and remand to the trial court for entry of an order consistent with this opinion.

## BACKGROUND

¶2 Architects in Utah prepare building designs for bids on public building projects. The designs contain specifications for door hardware: crash bars, hinges, and so forth. The distribution chain of door hardware is the focus of a civil antitrust investigation by the Utah Attorney General (AG).

¶3 The AG began investigating a bid-rigging scheme in September 1998. The AG's office heard allegations that door hardware specifications in the building designs used by architects to bid on public building projects favored a certain manufacturer of door hardware (Manufacturer) to the exclusion of other manufacturers. The AG's investigation concluded the following: (1) Manufacturer, a dominant market player, provides door hardware to three high-margin distributors in Utah (Distributors) at a variable wholesale price set at Manufacturer's discretion; (2) Manufacturer and Distributors offer free door hardware specification writing services for architects who submit bids on public buildings; (3) there are no independent door hardware specification writers in Utah; (4) some bids are submitted with specifications that designate one manufacturer's door hardware with a direction that no substitution with competitors' products be made, and a clear majority of these "no-substitution specifications" identify the products of Manufacturer as the products to be used; (5) if specifications are written such that they exclude competitor door hardware products, Manufacturer charges the normal wholesale price, but if specifications are written such that competing products qualify, Manufacturer reduces wholesale prices by up to 40%; (6) if one of the Distributors writes a door hardware specification for building plans that excludes competitor products, Manufacturer pays a "bonus" to that distributor; (7) Manufacturer can pay the bonus because the wholesale price is much higher than if competition had been allowed; (8) the bonus payments create incentive for Distributors to write specifications that exclude competitors' products; (9) the free specification writing

services restrain trade by preventing other brands from qualifying to be included in bids on public building projects; (10) the free specification writing services arrangement results in the State paying higher prices for door hardware than it would if the specifications were written without excluding all but Manufacturer's products.

¶ 4 In June, 1999, the AG sent letters to a number of architectural firms, including Brixen, asking for information about the preparation of door hardware specifications. No architectural firm responded to this inquiry. In November, 1999, the AG sent civil investigative demands (CIDs), pursuant to Utah Code Ann. § 76–10–917 (1999) (the "CID Statute"), to two architectural firms inquiring how the firms used specification-writing consultants. After analyzing the information returned by these two firms, the AG sent out additional CIDs to nineteen architectural firms. Only Brixen failed to respond.

¶ 5 Brixen filed a petition to set aside the CID on January 25, 2000. The trial court quashed the CID in its March 28, 2000 order, without setting forth any findings of fact or conclusions of law beyond a statement quashing the CID.[1] The State appealed to the Utah Supreme Court, which transferred the appeal to us pursuant to Utah Code Ann. § 78–2–2(4) (1996).

## ISSUES AND STANDARD OF REVIEW

¶ 6 The issue before us is whether the trial court erred in granting Brixen's Petition. The trial court failed to set forth its reasons for granting Brixen's Petition. Further, Brixen's Petition failed to assert any specific basis for setting aside the CID. *See* Utah Code Ann. § 76–10–917(7)(b)(i) (1999) ("The petition shall specify each ground upon which the petitioner relies in seeking the relief sought."). However, we recognize Brixen's right to require the AG to establish the propriety of the CID. Thus, we are left to review the statutory requirements the State must meet to defend the CID to determine

whether the State met its burden. *See id.* § 76–10–917(7)(b)(ii).

¶ 7 An enforceable CID must satisfy a three-prong test (CID Test) that requires the State to "establish [first,] that the demand is proper, [second,] that there is reasonable cause to believe that there has been a violation of [the antitrust laws], and [third,] that the information sought or document or object demanded is relevant to the violation." *Id.* The State argues it met its burden, and Brixen contests each prong.

¶ 8 First, the State argues that it had "reasonable cause to believe that there has been a violation of [the antitrust laws]." *Id.* When we evaluate whether the State has reasonable cause to believe a violation has occurred, "we will review the district court's decision for correctness while affording a 'measure of discretion' to that court in our application of the correctness standard to a given set of facts." *Evans v. State,* 963 P.2d 177, 179 (Utah 1998) (citation omitted). Here, we apply this standard to undisputed facts.

¶ 9 Next, Brixen counters that the CID is "unfair" because it includes language stating that Brixen is a "target," and that the information obtained from Brixen through the CID may be used in a "criminal proceeding." This argument addresses the first prong of the CID Test, namely, whether "the demand is proper." Utah Code Ann. § 76–10–917(7)(b)(ii) (1999). The definition of a "proper demand" is an issue of first impression in Utah. Thus, our evaluation of whether the CID issued to Brixen was proper is a matter of statutory construction, which we review for correctness as a matter of law. *See Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 13, 7 P.3d 777.

¶ 10 Finally, Brixen also counters that the State has not shown how the information it seeks from Brixen is relevant to an antitrust violation. " 'Whether certain evidence is relevant . . . is a question of law, which we review under a correction-of-error standard.' " *Lucas v. Murray City Civ. Serv.*

---

1. The district court did not announce the reasons for its decision in writing or on the record. Specific findings and conclusions would have

been of great assistance to this court and the parties.

*Comm'n,* 949 P.2d 746, 756 (Utah Ct.App. 1997) (quoting *State v. Gonzalez,* 822 P.2d 1214, 1216 (Utah Ct.App.1991)).

## ANALYSIS

¶ 11 The State appeals the district court's grant of Brixen's petition to quash the CID. The court did not announce any reasons nor specific grounds for granting Brixen's petition. Accordingly, we evaluate whether the State met its statutory burden under each prong of the CID Test. *See* Utah Code Ann. § 76–10–917(7)(b)(ii) (1999). We address each prong in order.

### I. Proper Demand

¶ 12 Brixen argues that the language in the CID is "unfair." The language alerts Brixen that "information produced under the CID may be used against [Brixen] in criminal or civil proceedings," and states that Brixen "is a target of the investigation." The CID Statute requires the State to establish that the demand is proper, not that it is fair. However, Brixen's argument questions whether the demand was proper. Thus, we address this issue.

¶ 13 We determine the definition of a proper demand as a matter of law, *see Esquivel v. Labor Comm'n,* 2000 UT 66 at ¶ 13, 7 P.3d 777 (applying a correctness standard of review to statutory interpretation), in light of rules of statutory construction and case law interpreting similar statutory requirements in other jurisdictions. *See* Utah Code Ann. § 76–10–926 (1999) ("The legislature intends that the courts, in construing this act, will be guided by interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes.").

### A. Statutory Construction and Supporting Case Law

¶ 14 The "'primary objective in construing [statutory language] is to give effect to the legislature's intent.'" *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616 (citation omitted). When "'statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent.'" *State v. Lindsay,* 2000 UT App 379, ¶ 5, 18 P.3d 504 (quoting *Horton v. Royal Order of the Sun,* 821 P.2d 1167, 1168 (Utah 1991)). Utah courts have a "long history of relying on dictionary definitions to determine plain meaning." *State v. Redd,* 1999 UT 108, ¶ 11, 992 P.2d 986. We note, however, that the dictionary does not give clear direction on the plain meaning of "proper" in the context of a "proper demand." "Suitable" or "appropriate" and "rigorously correct" or "exact" are possible definitions of "proper." *The American Heritage Dictionary* 993 (2d college ed.1985). However, these definitions are at odds. A suitable or appropriate demand would allow substantial compliance with statutory language, but a rigorously correct or exact demand would require strict compliance with the statute, to the exclusion of extra language.

¶ 15 We have recognized "'"that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."'" *State v. In,* 2000 UT App 358, ¶ 5, 18 P.3d 500 (citations omitted). Accordingly, "we interpret '"the terms of a statute ... as a comprehensive whole and not in piecemeal fashion."'" *Hercules, Inc. v. Tax Comm'n,* 2000 UT App 372, ¶ 22, 21 P.3d 231 (Thorne, J., dissenting) (alteration in original) (quoting *Bus. Aviation of S.D., Inc. v. Medivest, Inc.,* 882 P.2d 662, 665 (Utah 1994)) (additional citation omitted). In doing so, we must "give meaning, where possible, to all provisions of a statute," *Lund v. Brown,* 2000 UT 75, ¶ 23, 11 P.3d 277, and interpret the provisions "in harmony with other provisions in the same statute and 'with other statues under the same and related chapters.'" *Lyon,* 2000 UT 19 at ¶ 17, 5 P.3d 616 (quoting *Roberts v. Erickson,* 851 P.2d 643, 644 (Utah 1993)(per curiam)). Moreover, "'the interpretation must be based on the language used, and the court has no power to rewrite the statute to conform with an intention not expressed.'" *State v. Gonzales,* 2000 UT App 136, ¶ 14, 2 P.3d 954 (quoting *State v. Rudolph,* 970 P.2d 1221, 1229 (Utah 1998)).

¶ 16 The Utah Antitrust Act mentions a "demand [that] is proper," in two identical circumstances within the statute.

*See* Utah Code Ann. § 76–10–917(a), (b)(ii) (1999). These two instances, however, do not give any guidance on the meaning of "proper demand." Thus, with little guidance from the context,[2] we remain with two possible definitions: substantial compliance or strict compliance.

¶ 17 "Where we are faced with two alternative readings, and we have no reliable sources that clearly fix the legislative purpose, we look to the consequences of those readings to determine the meaning to be given the statute." *Redd,* 1999 UT 108 at ¶ 12, 992 P.2d 986. We " ' "look to the reason, spirit, and sense of the legislation, as indicated by the entire context and subject matter of the statute dealing with [antitrust laws]." ' " *Longley v. Leucadia Fin. Corp.,* 2000 UT 69, ¶ 19, 9 P.3d 762 (citations omitted). Further, we look "with an eye toward the construction that will achieve the best results in practical application, will avoid unacceptable consequences, and will be consistent with sound public policy." *Derbidge v. Mut. Protective Ins. Co.,* 963 P.2d 788, 791 (Utah Ct.App.1998) (internal quotations and citations omitted). "In other words, we interpret a statute to avoid absurd consequences," *Redd,* 1999 UT 108 at ¶ 12, 992 P.2d 986, and to arrive at " 'a reasonable and sensible construction.' " *State v. Garcia,* 965 P.2d 508, 512 (Utah Ct.App.1998) (quoting *State v. GAF Corp.,* 760 P.2d 310, 313 (Utah 1988)). "Our analysis is further guided by the Legislature's blanket directive that statutes 'be liberally construed with a view to effect the objects of the statutes and to promote justice.' " *Derbidge,* 963 P.2d at 791.

¶ 18 Case law relevant to "proper demands" shows that the purpose of a CID is to help the AG obtain information with which to evaluate whether a claim ought to be filed. In *Evans v. State,* 963 P.2d 177 (Utah 1998), the Utah Supreme Court stated that "the CIDs issued by the Utah Attorney General assist that agency in gathering enough information to make a proper determination as to whether a civil antitrust action should be initiated." *Id.* at 181. Further, after evaluating the reasonable cause standard, the court declared that part of the purpose of the CID Statute is "to allow an investigation to go forward on the assumption that the attorney general's case will only get stronger as the investigation proceeds." *Id.* at 182. Thus, the purpose of the CID is to assist the AG in gathering information to decide whether to initiate an antitrust action.

¶ 19 In *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391, 396 (D.Minn.1963), *aff'd per curiam, Gold Bond Stamp Co. v. United States,* 325 F.2d 1018 (8th Cir.1964), the court evaluated the strictness with which to construe a statutory requirement that a certain statement must be contained in the CID.[3] The Utah Supreme Court quoted *Gold Bond:* "[The purposes of the federal antitrust investigative provisions] are twofold: (1) to enable the Attorney General to determine whether there has been a violation of the antitrust laws, and if so (2) to enable the Attorney General to allege properly the violations in a civil complaint." *Evans,* 963 P.2d at 181. The court in *Gold Bond* explained that "[t]o insist upon too much specificity with regard to the requirement of this section would defeat the purpose of the Act, and an overly strict interpretation of this section

2. Two other sources aid in determining the definition of a word. First, we may look to the declaration of legislative policy in passing the act, but "we will not limit our interpretation of a statute by reference to a 'general declaration of purpose.' " *Price Dev. Co. v. Orem City,* 2000 UT 26, ¶ 23, 995 P.2d 1237. In this case, the purpose of the act, as set forth in Utah Code Ann. § 76–10–912 (1999), is not instructive on how to define "proper demand." Second, "we may 'seek guidance from the legislative history.' " *State v. Garcia,* 965 P.2d 508, 512 (Utah Ct.App. 1998) (citation omitted). Unfortunately, the recorded legislative history sheds no light on the definition of "proper demand."

3. The court in *Gold Bond* interpreted the federal antitrust CID requirement that "[e]ach demand shall—'(1) state the nature of the conduct constituting the alleged antitrust violation which is under investigation and the provision of law applicable thereto.' " *Gold Bond,* 221 F.Supp. at 397 (quoting section 3(b)(1) of the Antitrust Civil Process Act (1962)) (later codified at 15 U.S.C.A. § 1312(b)(1) (1998)). The Utah counterpart is similar: "Each demand shall state: (i) The nature of the activities under investigation, constituting the alleged antitrust violation, which may result in a violation of this act and the applicable provision of law." Utah Code Ann. § 76–10–917(2)(a)(i) (1999).

would only breed litigation and encourage everyone investigated to challenge the sufficiency of the notice." *Gold Bond,* 221 F.Supp. at 397.

¶ 20 The court in *Gold Bond* recognized that CIDs "may be considered in one sense of the term a 'fishing expedition,'" because, as it is well understood, "[t]he Attorney General cannot assure anyone at this posture of the proceeding that there has [actually] been any violation of the law." *Id.* at 396. The court explained that a CID is not a "fishing trip" when "the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Id.* (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 652, 70 S.Ct. 357, 369, 94 L.Ed. 401 (1950)). Of course, the investigator "'shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be "limited ... by forecasts of the probable result of the investigation."'" *Id.* at 395 (alteration in original) (quoting *Okla. Press Publ'g Co. v. Walling,* 327 U.S. 186, 216, 66 S.Ct. 494, 509, 90 L.Ed. 614 (1946) (additional citation omitted)). Thus, it appears that courts have adopted a policy of substantial compliance that allows an investigation to go forward despite a shortage of technical verbiage in the CID.[4]

¶ 21 We agree with the "'reasonable and sensible construction,'" *Garcia,* 965 P.2d at 512 (citation omitted), given by the interpretation and public policy analysis of the court in *Gold Bond.* Requiring CIDs to substantially comply with the required statements comports with "'"the reason, spirit, and sense of the legislation,"'" *Longley,* 2000 UT 69 at ¶ 19, 9 P.3d 762 (citations omitted), that was announced in *Evans. See Evans* 963 P.2d at 183. Moreover, a substantial compliance construction has the best "practical application," and best "'effects the object[ ] of the statute,'" *Derbidge,* 963 P.2d at 791 (citation omitted), because it allows the AG to continue an investigation, and thus

assists the AG to determine whether an enforcement action should be initiated. *See Evans,* 963 P.2d at 183. Accordingly, we conclude that a "demand is proper" when it substantially complies on its face with the statutory requirements set forth in section 76–10–917(2).

### B. Demand Issued to Brixen

¶ 22 In light of this definition, we determine whether the demand issued to Brixen was proper. First, the AG can issue a CID "[w]hen the attorney general has reasonable cause to believe that *any person* may be in possession, custody, or control of *any information* relevant to *a civil antitrust investigation.*" Utah Code Ann. § 76–10–917(1) (1999) (emphasis added). Thus, although CID recipients may be completely innocent bystanders, the State may properly serve them with CIDs if the State has reasonable cause to believe the bystander has any information relevant to any civil antitrust investigation.

¶ 23 The first important questions to answer are: (1) whether the AG is conducting a civil antitrust investigation; and (2) whether the AG has reasonable cause to believe the recipient has any information relevant to that investigation.[5] In this case, the AG was engaged in a continuing investigation of anti-competitive practices by door hardware manufacturers and distributors who offer free door hardware specification writing services for bids used by architects on public building projects. Thus, the State met the requirement that there be a civil antitrust investigation.

¶ 24 The AG had obtained information indicating that there are no independent hardware specification writers in Utah, and that Brixen had successfully submitted bids on public buildings that included door hardware specifications. As successful bidders, Brixen could provide information about whether it used the door hardware specification services

---

4. *See generally, United States v. Markwood,* 48 F.3d 969, 975–80 (6th Cir.1995) (discussing when antitrust CIDs and other administrative subpoenas are enforceable).

5. We discuss the "reasonable cause to believe" standard at length in the next part of this opinion. The State need only present some objective evidence, without consideration of accuracy or weight of that evidence, that supports the State's belief for that belief to be reasonable.

provided by Manufacturer or Distributors. This information would help the state to identify specific instances when Manufacturer or Distributors violated antitrust laws. Whether the State has reasonable cause to believe that Brixen was consciously involved with the suspected antitrust violators is immaterial to this evaluation. The State must only have reasonable cause to believe Brixen has *"any information* relevant to a civil antitrust *investigation." Id.* (emphasis added). Thus, the State has also satisfied its burden to show reasonable cause to believe that Brixen possesses information relevant to an investigation.

¶ 25 Second, a CID must contain statements concerning the investigation, the rights of the recipient, and the proper form of responding.[6] *See id.* § 76–10–917(2). The CID issued to Brixen included all the statements required by section 76–10–917(1) to (2), including the required statement informing Brixen "that the documents, materials, or testimony in response to the demand *may be used in a civil or criminal proceeding."* [7] *Id.* § 76–10–917(2)(a)(iii) (emphasis added).

¶ 26 The CID also included the following warning to Brixen: "You are a target of this investigation." The "target" language seems to be drawn from the statutorily required statements for subpoenas used in criminal investigations. *See id.* § 77–22–2(5)(b)(i). Although section 76–10–917 specifically prohibits the AG from invoking section 77–22–2, we do not think that including the "target" language invokes that section. Further, because the CID is required by statute to include notice that the information obtained can be used in a criminal proceeding, the "target" language does nothing to enhance the rights and protections available to the recipient corporation. Thus, we conclude that the "target" language, while perhaps unsettling to the recipient corporation, is not fatal to the propriety of the CID.

¶ 27 The CID substantially complied with the requirements of section 76–10–917. Ac-

---

6. A CID must include the following statements:

    (i) The nature of the activities under investigation, constituting the alleged antitrust violation, which may result in a violation of this act and the applicable provision of law;
    (ii) that the recipient is entitled to counsel;
    (iii) that the documents, materials, or testimony in response to the demand may be used in a civil or criminal proceeding;
    (iv) that if the recipient does not comply with the demand the Office of the Attorney General may compel compliance by appearance, upon reasonable notice to the recipient, before the district court in the judicial district wherein the recipient resides or does business and only upon a showing before that district court that the requirements of Subsection (7) have been met;
    (v) that the recipient has the right at any time before the return date of the demand, or within 30 days, whichever period is shorter, to seek a court order determining the validity of the demand; and
    (vi) that at any time during the proceeding the person may assert any applicable privilege. Utah Code Ann. § 76–10–917(2)(a)(i) to (vi) (1999). In addition, when the CID calls for "responses to written interrogatories," as the CID issued to Brixen does, the CID must do the following:
    (i) state that each interrogatory shall be answered separately and fully in writing and under oath, unless the person objects to the interrogatory, in which event the reasons for objection shall be stated in lieu of an answer;
    (ii) state that the answers are to be signed by the person making them, and the objections are to be signed by the attorney making them;
    (iii) identify by name and address the individual at the Office of the Attorney General on whom answers and objections provided under this Subsection (2)(d) are to be served; and
    (iv) prescribe the date on or before which these answers and objections are to be served on the identified individual.
Utah Code Ann. § 76–10–917(2)(d) (1999).

7. Brixen, a corporate defendant, would have "no privilege against self-incrimination." *Hyster Co. v. United States*, 338 F.2d 183, 187 (9th Cir. 1964). Further, "[t]he fourth amendment is satisfied if the subpoenaed party is allowed 'to question the reasonableness of the subpoena, before suffering any penalties for refusing to comply with it, by raising objections in an action in district court.'" *In re Criminal Investigation*, 754 P.2d 633, 642 (Utah 1988) (quoting *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984)). Here, the CID Statute satisfies this fourth amendment concern. *See* Utah Code Ann. § 76–10–917(7)(a), 917(7)(b)(i) (1999) (allowing CID recipient to petition to set aside CID, and requiring AG to meet the CID Test to compel compliance even if CID recipient merely refuses to comply).

    The dissent raises some legitimate concerns about the criminal context. However, these concerns were not presented to the district court nor ruled on below. Further, they were not briefed or argued by the parties on appeal.

cordingly, we conclude that the CID issued to Brixen was a proper demand.

## II. Reasonable Cause to Believe There is an Antitrust Violation

■■■ ¶ 28 When a CID challenge proceeding is filed, "it is the attorney general's burden to establish ... that there is reasonable cause to believe there has been a violation of [the antitrust laws]." Utah Code Ann. § 76–10–917(7)(b)(ii) (1999). Although the "reasonable cause to believe" standard is the same as in the previous section, the burden is more demanding than the burden that must be met to show the CID is proper. *Compare id.* § 76–10–917(1) (requiring a showing that there is reasonable cause to believe the recipient has information relevant to an antitrust *investigation*) (emphasis added), *with id.* § 76–10–917(7)(b)(ii) (requiring a showing that the State has reasonable cause to believe there has been an antitrust *violation*) (emphasis added). The burden is similar in that it does not require that the CID recipient be a conspirator in the antitrust violation.[8] Thus, the State is required to show how the information it has already collected gives the State "reasonable cause to believe that there has been a *violation* [of antitrust laws]." *Id.* § 76–10–917(7)(b)(ii) (emphasis added).

### A. Reasonable Cause to Believe

¶ 29 The Utah Supreme Court in *Evans v. State*, 963 P.2d 177 (Utah 1998), focused much of its discussion on how the "reason-

able cause to believe" standard should be interpreted and applied by Utah courts. *Id.* at 180–84. The court noted that "the CIDs issued by the Utah Attorney General assist that agency in gathering enough information to make a proper determination as to whether a civil antitrust action should be initiated." *Id.* at 181. The court then adopted the guidance given to Arizona courts in *Babbitt v. Herndon*, 119 Ariz. 454, 581 P.2d 688 (1978).[9] Arizona's guidance, as quoted in *Evans*, is as follows:

> "The decision is relatively uncomplicated, as it does not involve extensive weighing or testing of evidence or any resolution of conflicts on the evidence. *The question at hearing is not whether the state's information is true or uncontradicted, but whether, assuming its accuracy, the state has in its possession sufficient information to satisfy a judge that it is reasonable to believe that there has been a violation of the act.*"

*Evans*, 963 P.2d at 182 (quoting *Babbitt*, 581 P.2d at 692). Accordingly, we do not evaluate the veracity of the State's information. We assume the assertions are true and decide whether we are satisfied that "it is reasonable to believe there has been a[n antitrust] violation." *Id.*

¶ 30 The court in *Evans* next evaluated the burden of proof associated with the "reasonable cause to believe" standard. The court made a comparison with the probable cause standard in preliminary hearings, stating that "*evidence fails to meet the probable cause standard only when it is 'wholly lack-*

---

8. Concerns about whether a sufficient nexus connects the CID recipient to the antitrust violation are dealt with under prongs one and three of the CID Test. The first prong evaluates whether the CID recipient has information relevant to an *investigation*, and the third prong evaluates whether the CID recipient has information relevant to a *violation*.

The nexus required does not demand that there be reasonable cause to believe that the CID recipient is a "conspirator." The CID recipient only need be in "possession, custody, or control of any information relevant to a civil antitrust violation." Utah Code Ann. § 76–10–917(1) (1999). Possessors of relevant information may be completely innocent and unaware of antitrust violations. Nonetheless, they could possess relevant information. Thus, for a CID to be enforceable, the State need not show that the CID recipient has any connection to the antitrust violation

beyond "possession, custody, or control of *any* information relevant to" the violation. *Id.* (emphasis added).

9. Although stare decisis mandates that we follow the supreme court's reliance on *Babbitt* to interpret the "reasonable cause to believe" standard, we note that the language of the Arizona statute contains a slight difference. The Utah statute requires a finding of "reasonable cause to believe that there *has been* a violation," Utah Code Ann. § 76–10–917(7)(b)(ii) (1999) (emphasis added), while the Arizona statute mandates a finding of "reasonable cause to believe there *may have been* a violation." Arizona Uniform State Antitrust Act, Ariz.Rev.Stat. § 44–1406(B) (2000) (emphasis added); *Evans*, 963 P.2d at 181 n. 5. Thus, it is possible that the Arizona Legislature set a lower burden than the Utah Legislature.

*ing and incapable of reasonable inference* to prove some issue which supports the [prosecution's] claim.'" *Id.* (alteration in original) (emphasis added) (quoting *State v. Pledger*, 896 P.2d 1226, 1229 (Utah 1995)). The court's comparison to the reasonable cause to believe standard revealed that the *"reasonable cause [standard] is lower* than probable cause for preliminary hearings." *Id.* (emphasis added). Further, the court stated: "Reason dictates that an investigation based on the reasonable cause standard *requires less evidence* than ... the probable cause standard." [10] *Id.* (emphasis added).

¶ 31 The CID recipients in *Evans* argued that "the reasonable cause standard requires some showing of objective evidence that there was an illegal agreement or other antitrust violation," because requiring less "could lead to abuses in the investigative process." *Id.* at 182–83. The supreme court only agreed that the State is required to set forth *"some objective evidence* that there has been a violation of the antitrust laws," but immediately explained that the lower standard is to facilitate investigation. *Id.* at 183 (emphasis added). The State's burden of proof is "the *lowest* [evidentiary standard]." [11] *Id.* at 182 (emphasis added). Accordingly, we review the record for some objective evidence that indicates the possibility of an antitrust violation.

▮ ¶ 32 To determine what qualifies as "objective evidence," we examine the type of evidence relied on by the supreme court in *Evans*. In *Evans*, the State appealed an order quashing a CID. *See Evans*, 963 P.2d at 178. The State was investigating two radio stations suspected of fixing advertising prices in eastern Utah. *See id.* at 179. The supreme court relied on objective evidence submitted by the State in only two documents: first, the articles of organization of the owner of the land and buildings where the radio stations were located, DEE Properties, L.L.C. (DEE); second, the affidavit of the State's antitrust investigator. [12] *See id.* Accordingly, in this case we survey the affidavit of the State's antitrust investigator for objective evidence of an antitrust violation. [13]

### B. Elements of an Antitrust Violation

¶ 33 The State must show reasonable cause to believe there is (1) a "contract, combina-

---

**10.** We note that, since *Evans*, the supreme court lowered the probable cause standard for preliminary hearings, equating it with the standard required for an arrest warrant. *See State v. Clark*, 2001 UT 9, ¶ 16, 20 P.3d 300. At a preliminary hearing, the court "view[s] all evidence in the light most favorable to the prosecution and must draw all reasonable inferences in favor of the prosecution." *Id.* at ¶ 10. Probable cause then requires "believable evidence of all the elements of the crime charged." *Id.* at ¶ 15 (internal quotations and citation omitted). The quantum of evidence required of the State is "sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it." *Id.* at ¶ 16.

**11.** While some concerns may arise about protections for CID recipients, the supreme court in *Evans* remarked that "[t]he higher protections afforded by higher standards are not necessary because CIDs are part of an *investigation* rather than an *enforcement action*." *Evans*, 963 P.2d at 183 (emphasis added). If an "investigation uncovers evidence, the State would initiate a civil action which would require the State to satisfy the higher standards before any sanctions are imposed." *Id.* Further, "[t]he statute ... gives the State broad discretion to investigate possible antitrust violations while at the same time protecting citizens from investigations not supported by reasonable cause." *Id.*

**12.** Unless the State has received consent from the person who is the source, the State is prohibited from revealing the sources of its information to anyone but grand juries and law enforcement agencies. *See* Utah Code Ann. § 76–10–917(8) (1999). Thus, the State cannot respond to inquiries about its sources of information for the affidavit in a hearing which challenges the validity of the CID.

**13.** The AG's investigator presented information after interviewing several people and reviewing several documents. The Investigator described his sources in the following manner:

> During this investigation, I have interviewed over twenty individuals familiar with the sale of door hardware via bidding for installation in public buildings. The individuals interviewed include representatives of a major manufacturer of door hardware, distributors of door hardware, school district officials, architects, and the Utah Division of Facilities and Construction Management (DFCM). In addition, I have reviewed documents received from a Utah college, school districts, and DFCM as well as documents received from two Salt Lake architectural firms pursuant to Civil Investigative Demands issued to the architectural firms.

tion in the form of a trust or otherwise, or conspiracy" that is (2) "in restraint of trade or commerce." Utah Code Ann. § 76–10–914(1) (1999). Although no Utah case has evaluated the elements of a civil antitrust violation under the Utah Antitrust Act, we look to "interpretations given by the federal courts to comparable federal antitrust statutes and by other state courts to comparable state antitrust statutes."[14] *Id.* § 76–10–926.

1. Contract, Combination, or Conspiracy

¶ 34 The State asserts that there is a conspiracy between Manufacturer, Distributors, and possibly architects. Brixen counters that the State has not shown the existence of "an agreement to restrain trade," which is required for an antitrust violation. However, Brixen focuses its challenge to the conspiracy element of an antitrust violation on the failure of the State to show objective facts of an architect-manufacturer conspiracy. The State must only show that there is *a* violation of the antitrust laws to satisfy the "reasonable cause to believe" prong. Thus, showing a conspiracy between Manufacturer and Distributors is sufficient.

▆▆▆▆ ¶ 35 "[I]t is settled that 'no formal agreement is necessary to constitute an unlawful conspiracy,' and that 'business behavior is admissible circumstantial evidence from which the fact finder may infer agreement.' " *Norfolk Monument Co. v. Woodlawn Mem'l Gardens, Inc.,* 394 U.S. 700, 704, 89 S.Ct. 1391, 1393, 22 L.Ed.2d 658 (1969) (citations omitted); *see also Gen. Chem., Inc. v. Exxon Chem. Co.,* 625 F.2d 1231, 1233 (5th Cir.1980) ("Even a successful antitrust plaintiff will seldom be able to offer a direct evidence of a conspiracy and such evidence is not a requirement. However, to survive a motion for summary judgment the evidence must suggest reasonable inferences of conspiracy."); *Lochhead v. Alacano,* 697 F.Supp. 406, 417 (D.Utah 1988) ("[B]ehavior may im-

ply an agreement to conspire where no formal agreement has been shown.").

¶ 36 Agreements can be horizontal between competitors, or vertical along a distribution chain. In *Evans,* a horizontal agreement case in the CID context, the supreme court looked to the State's objective evidence to determine whether there was an agreement. The court noted that DEE's articles of organization expressly permitted "conflict of interest transactions between DEE and any company in which DEE's members [had] an interest." *Evans,* 963 P.2d at 183. The court agreed with the State's assertion that DEE's articles of organization "*seem[ed] to facilitate* collusive agreements" because members of DEE included the owner of one radio station and the manager of another.[15] *Id.* (emphasis added).

¶ 37 In *State v. Thompson,* 751 P.2d 805 (Utah Ct.App.1988), *rev'd on other grounds,* 810 P.2d 415 (Utah 1991), we considered a vertical agreement. *Thompson,* which was brought under the criminal antitrust statute, involved a security guard service provider that paid an amount of money to the Utah Power & Light (UP & L) security officer in exchange for excluding other security guard service providers from successfully bidding on the UP & L security guard services contract. *See Thompson,* 751 P.2d at 807. *Thompson* is conceptually similar to this case. In *Thompson,* a provider of goods and services paid an individual, one who influences the selection of goods and services purchased, so that the company would purchase from the provider to the exclusion of the provider's competition. Here, the provider of goods or services—Manufacturer—pays "bonuses" to those capable of influencing the selection of goods and services purchased-Distributors, through free specification writing services-so that the State purchases from the provider to the exclusion of provider's competi-

---

**14.** We note that the federal antitrust statute is nearly identical to the Utah counterpart: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal." 15 U.S.C. § 1 (1997). Thus, we look to the expansive body of federal antitrust law for guid-

ance in evaluating a civil antitrust claim under the Utah Antitrust Act.

**15.** The bulk of the evidence considered by the supreme court in *Evans* was contained in the antitrust investigator's affidavit. *See Evans,* 963 P.2d at 183–84.

tors. The Distributors' influence is in their offering free door hardware specification writing services to architects and writing the specifications that exclude Manufacturer's competition.

¶ 38 The State has presented some objective evidence from which a vertical conspiracy between Manufacturer and Distributor can be inferred. The affidavit of the State's antitrust investigator recites the findings as set forth earlier in this opinion. The investigator found that there appears to be a collusive effort between Manufacturer and Distributors to suppress price competition in the market for public bidding of door hardware to be installed in public building projects in Utah. The acts of Manufacturer and Distributors tend to show an agreement: Distributors agree to exclude Manufacturer's competition when drafting door hardware specifications for architects in return for payment of "bonuses" by Manufacturer. Both parties are interested in the additional money that can be made by suppressing competition.

¶ 39 Although the State's evidence may not conclusively show the existence of an agreement among Manufacturer and Distributors, we need not decide whether the State's evidence is sufficient to prove a conspiracy. We only determine whether the State's objective evidence indicates the possibility of a conspiracy. *See Evans,* 963 P.2d at 182. We conclude that the State's evidence is sufficient to amount to reasonable cause to believe there is a conspiracy.

### 2. In Restraint of Trade or Commerce

¶ 40 The second part of an antitrust violation is "restraint of trade or commerce." Utah Code Ann. § 76–10–914(1) (1999). Although the federal antitrust law, like the Utah counterpart, "by its terms, prohibits every agreement 'in restraint of trade,' " the United States Supreme Court has "long recognized that Congress intended to outlaw only unreasonable restraints." *State Oil Co. v. Khan,* 522 U.S. 3, 10, 118 S.Ct. 275, 279, 139 L.Ed.2d 199 (1997); *see also Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.,* 472 U.S. 284, 289, 105 S.Ct. 2613, 2616, 86 L.Ed.2d 202 (1985) (stating that "every commercial agreement restrains trade").

¶ 41 Some activities in restraint of trade "have such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se.*" *Id.; see also,* Utah Code Ann. § 76–10–920(1)(a) (1999) (specifying the following as per se violations: "price fixing, bid rigging, agreeing among competitors to divide customers or territories, or by engaging in a group boycott with specific intent of eliminating competition"). Other antitrust behavior " 'may have procompetitive interbrand effects.' " *Khan,* 522 U.S. at 14, 118 S.Ct. at 281 (citation omitted); *see also Nat'l Ass'n of Review Appraisers & Mortgage Underwriters v. Appraisal Foundation,* 64 F.3d 1130, 1133 (8th Cir.1995) (noting that some restraints on trade serve " 'some legitimate purpose necessary to the proper functioning . . . and overall efficiency of the market' " (citation omitted)). Thus, "most antitrust claims are analyzed under a 'rule of reason,' " which requires the fact finder to evaluate whether the restraint on trade "imposes an unreasonable restraint on competition." *Khan,* 522 U.S. at 10, 118 S.Ct. at 279. Consequently, the United States Supreme Court has "expressed reluctance to adopt *per se* rules with regard to 'restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious.' " *Id.* (quoting *FTC v. Ind. Fed'n of Dentists,* 476 U.S. 447, 458–459, 106 S.Ct. 2009, 2018, 90 L.Ed.2d 445 (1986)).

¶ 42 At this stage of the investigation, the instant case presents circumstances that restrain trade, but "the economic impact . . . [may not be] immediately obvious." *Id.* Even if the State's objective evidence of the alleged restraint of trade does not rise to a per se violation, the State could still prevail by showing some objective evidence that the conspiracy unreasonably restrains trade. Again, our duty is not to evaluate whether the State will ultimately succeed on an antitrust claim, only whether the State's objective evidence indicates the possibility of an unreasonable restraint of trade. *See Evans,* 963 P.2d at 182.

¶ 43 In *Evans,* the supreme court relied on the conclusions of the AG's investigator who concluded that the facts he reported in his affidavit "created a potential for anticompetitive conduct." *Id.* He also concluded, "based on [his] experience as an antitrust investigator—that further investigation was warranted." *Id.* at 183 (emphasis added). The court concluded that the investigator's conclusions were sufficient to overcome the reasonable cause to believe hurdle.

¶ 44 Here, the State's evidence shows that the collusive effort between Manufacturer and Distributors restrains trade. Distributors draft door hardware specifications that match Manufacturer's products. Sometimes the specifications match Manufacturer's products exclusively, and sometimes the specifications do not allow substitution with similar products. Once Manufacturer's products are the only products available for construction of the public building, the Manufacturer raises the prices it charges to the State and pays a "bonus" to Distributors. The collusive effort injures the State of Utah by increasing construction costs of public buildings. At the same time, the effort restrains competition by excluding the possibility of using other manufacturers' lower priced, and possibly higher quality, products. Accordingly, we conclude that the State's objective evidence sufficiently shows the possibility of an unreasonable restraint of trade.

¶ 45 In summary, the affidavit of the AG's investigator sets forth the findings mentioned earlier in this opinion. The investigator's findings show that the circumstances of the relationship between Manufacturer and Distributors give rise to the possibility of a collusive arrangement and unreasonable restraint of trade. Accordingly, we conclude that the objective evidence in the affidavit of the AG's investigator gives the State "reasonable cause to believe there has been a[n antitrust] violation." Utah Code Ann. § 76–10–917(7)(b)(ii) (1999).

### III. Information Relevant to the Violation

¶ 46 The third prong of the CID Test prohibits the State from issuing CIDs to parties with no information relevant to the violation. The State agreed that Brixen may be unwittingly involved in this alleged conspiracy. However, the State urges that Brixen may have information relevant to the violation because Brixen submitted bids that included door hardware specifications for public building projects. The State wants to discover whether Brixen used the free specification writing services of Manufacturer or Distributors.

¶ 47 Brixen argues that the State has not shown that Brixen *has* information relevant to an antitrust violation. This argument seems to stem from the first and third prongs of the CID Test, but is misdirected. The Utah Antitrust Act does not require that the State *prove* that the CID recipient possesses information relevant to an antitrust violation. Certainly, to issue a CID, the State must have "reasonable cause to believe that *any* person may be in *possession* . . . of any information relevant to a civil antitrust investigation." Utah Code Ann. § 76–10–917(1) (1999) (emphasis added). However, when the CID is contested, the State must only *prove* "that the *information sought* . . . is *relevant* to the violation." *Id.* § 76–10–917(7)(b)(ii) (emphasis added). The State easily meets this burden.

¶ 48 Federal law looks to standards set in subpoena duces tecum proceedings for guidance regarding antitrust civil investigative demands. *See* 15 U.S.C. § 1312(c)(1)(A) (1998) (stating that antitrust civil investigative demand follows standards of subpoenas duces tecum for protected material or information). The United States Supreme Court reviewed a challenge to the relevancy element of a subpoena duces tecum in *United States v. R. Enter.,* 498 U.S. 292, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991). There, the Court stated that information requested is relevant unless "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the . . . investigation." *Id.* at 301, 111 S.Ct. at 728; *see generally, United States v. Markwood,* 48 F.3d 969, 975–80 (6th Cir.1995) (discussing the requirements for an enforceable CID). We adopt this standard for relevancy because the present proceeding for a civil in-

vestigative demand is in the investigative stage, as is a subpoena duces tecum. Further, the context of the interpretation of the relevancy standard is similar to the subpoena duces tecum context. *See Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616 (requiring provisions be interpreted "in harmony with other provisions in the same statute and 'with other statues under the same and related chapters'" (citation omitted)); *see also* Utah Code Ann. § 76–10–926 (stating Utah courts should "be guided by interpretations given by the federal courts to comparable federal antitrust statutes"). Accordingly, the State has a low hurdle to overcome when showing how the information sought is relevant.

▪ ¶ 49 The mere fact that Brixen has submitted bids on public building projects that contain door hardware specifications gives rise to a "reasonable possibility that the category of materials the Government seeks [is] ... relevant to the general subject." *R. Enter.,* 498 U.S. at 301, 111 S.Ct. at 728. Thus, we conclude that the CID issued by the State to Brixen requested information that was relevant to an antitrust violation.

## CONCLUSION

¶ 50 We initially conclude that the CID was proper because the State has reason to believe that Brixen is in possession of information relevant to an antitrust investigation and because the CID substantially complied with all the statutory requirements. Next, we conclude that the State has reasonable cause to believe that there is a violation of the state antitrust laws because the State produced some objective evidence indicating the possibility of an agreement that unreasonably restrains trade. Finally, we conclude that the information the State seeks from Brixen is relevant to the violation. Accordingly, we reverse the trial court's grant of Brixen's Motion to Quash, and remand to

the trial court for entry of an order compelling Brixen to answer the CID.

¶ 51 I CONCUR: WILLIAM A. THORNE, Judge.

DAVIS, Judge (dissenting):

¶ 52 I respectfully dissent. I would affirm the trial court's grant of Brixen's petition to quash the CID because I consider section 76–10–917, to the extent information obtained thereunder may be used in a criminal proceeding, to be unconstitutional. This is an appropriate case for this court to exercise its ability to affirm on any ground. *See Dipoma v. McPhie,* 2000 UT App 130, ¶ 4, 1 P.3d 564 (stating "[t]his court may affirm a lower court's ruling on any alternative ground even though that ground or theory was not identified by the lower court as the basis of its ruling" (quotations and citation omitted)).[1]

¶ 53 CIDs are a method by which the attorney general may compel an individual or corporation to provide "information relevant to a civil antitrust investigation." Utah Code Ann. § 76–10–917(1) (1999). Thus, CIDs are essentially administrative subpoenas issued by the attorney general.[2] *See id.* at § 76–10–917(1)–(2) (stating attorney general may demand documentary material, oral testimony, and responses to interrogatories, and attorney general may compel compliance by appearance before district court); *cf. Evans v. State,* 963 P.2d 177, 181 (Utah 1998) (stating "'court should not set aside a CID unless it would quash the same request contained in a subpoena or subpoena duces tecum issued by a district court in aid of a grand jury investigation'" (citation omitted)). However, unlike most subpoenas, the attorney general may issue CIDs without any prior scrutiny or approval by a court or grand jury. *See* Utah Code Ann. § 76–10–917(1) (1999). Therefore, a court does not have the opportunity to review the validity and scope of a CID until *after* a person or entity has been served with a CID. *See id.* at § 76–10–917(7)(b)(i). Consequently, a person or entity served with a

1. In addition, the concerns expressed by the trial court relative to, among other things, the absence of objective evidence implicate the constitutional considerations contained herein.

2. Although a CID is not issued in the "name of the court or judge," the CID "carri[es] with it a command dignified by the sanction of the law." 81 Am.Jur.2d, *Witnesses* § 7 (2000).

CID must take affirmative actions to ensure that their rights are not violated.[3]

¶ 54 The attorney general's unfettered ability to *issue* CIDs is especially troubling because CIDs are used to uncover evidence of criminal, as well as civil antitrust violations. *See* Utah Code Ann. § 76–10–920(1) (1995) (providing individual who violates section 76–10–914 may be fined up to $100,000 or *imprisoned up to three years* and corporation may be fined up to $500,000).[4] Further, regardless of whether a person or entity has engaged in illegal anticompetitive activities, "the attorney general may disclose testimony or documents obtained [through a CID] ... to (i) any grand jury; and (ii) officers or employees of federal or state law enforcement agencies." Utah Code Ann. § 76–10–917(8)(b) (1999); *see also id.* § 76–10–917(2)(a)(iii) (stating CID must state "that the documents, materials, or testimony in response to the demand may be used in a civil or criminal proceeding"). Thus, the attorney general may utilize a CID to gather evidence that may be used in a criminal prosecution.

¶ 55 As the majority points out, we are bound by the supreme court's ruling in *Evans v. State*, 963 P.2d 177 (Utah 1998), regarding the attorney general's burden in obtaining judicial enforcement of a CID. However, *Evans* does not appear to control the application of section 76–10–917 in criminal proceedings and the unconstitutionality thereof in that context. Specifically, in *Evans* the court stated:

The notion that the reason to believe standard is a relatively low burden is further supported by the purposes behind the federal antitrust investigative provisions. One federal court has noted that such purposes are twofold: "(1) to enable the Attorney General to determine whether there has been a violation of the antitrust laws, and if so (2) to enable the Attorney General to allege properly the violations in a *civil complaint.*" *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391, 397 (D.Minn. 1963). Thus, CIDs simply facilitate the attorney general's investigations into antitrust violations and enable the attorney general to gather enough information to initiate *a proper civil action.* Likewise, the CIDs issued by the Utah Attorney General assist that agency in gathering enough information to make a proper determination as to whether a *civil antitrust action* should be initiated.

*Evans,* 963 P.2d at 181 (emphasis added).

¶ 56 The above language suggests that the supreme court considered the information sought in a CID would be used solely in the context of civil actions.[5] Thus, the court did not address the constitutional concerns that arise when a statute permits a prosecutor to use what amounts to an administrative subpoena to obtain evidence that may be used in a criminal prosecution. Consequently, *Evans* does not appear to control the issue of whether portions of section 76–10–917 violate

---

3. The majority notes that corporations do not have a right against self incrimination, *see Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 2287, 101 L.Ed.2d 98 (1988); however, CIDs may be issued to natural persons as well as corporations. Moreover, "[t]he fourth amendment prohibition against unreasonable searches and seizures protects both individuals and corporations." *In re Criminal Investigation,* 754 P.2d 633, 642 (Utah 1988).

4. In addition, the definition of, and penalties for, illegal anticompetitive activities are contained in the Utah Criminal Code. *See* Utah Code Ann. §§ 76–10–914, 76–10–920 (Supp.2000).

5. The supreme court's view that CIDs are used solely for civil actions is further evidenced by the fact that the court adopted the "sound reasoning and the sensible definition of 'reasonable cause'

elucidated by the *Babbitt* court." *Id.* at 182. In *Babbitt v. Herndon,* 119 Ariz. 454, 581 P.2d 688 (1978), the Supreme Court of Arizona interpreted the reasonable cause standard of Arizona's Consumer Fraud Act. *See id.* However, unlike section 76–10–917, Arizona's Consumer Fraud Act does not provide for criminal penalties. *See* Ariz.Rev.Stat. § 44–1407 (2000) (stating "attorney general may bring an action for appropriate injunctive or other equitable relief and civil penalties"). Thus, the Utah Supreme Court adopted a standard appropriate for civil actions when it utilized the reasonable cause definition contained in *Babbitt. See Babbitt,* 581 P.2d at 692. Further, section 76–10–917 creates some confusion by providing for issuance of a CID "prior to the commencement of a civil action." Utah Code Ann. § 76–10–917(1) (1996). It is not clear whether the statute refers to the results of the investigation or an action to enforce the CID.

a person's rights under the federal and state constitutions.[6]

¶ 57 The attorney general's ability to use CIDs in criminal investigations implicates constitutional concerns that do not arise when subpoenas are used for civil investigations.

The difference between civil and criminal investigations lies at the very foundation of much of our procedural law, in part because of the Fourth Amendment. The United States Supreme Court has relied upon the distinction invariably in cases involving subpoenas issued by administrative agencies and special commissions and challenged on Fourth and Fifth Amendment grounds.

. . . .

Furthermore, the Supreme Court has specifically recognized that the government's deliberate use of administrative subpoenas to gather evidence in a criminal case impermissibly disregards the "safeguards and restrictions of the Constitution and laws of the United States." *Abel v. United States*, 362 U.S. 217, 226, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). In other words, the Court has impliedly determined that the safeguards appropriate in civil administrative proceedings are inadequate to protect the constitutional rights of individuals in criminal law proceedings.

*In re Criminal Investigation*, 754 P.2d 633, 665 (Utah 1988) (Stewart, J., dissenting). Consequently, "[t]he flexible standards applicable to administrative subpoenas should not apply to subpoenas issued by a state's prosecuting attorney in the context of a criminal investigation." *Id.*

¶ 58 The Legislature has recognized that the recipient of an administrative subpoena, used as part of a criminal investigation, is entitled to "the 'safeguards and restrictions of the Constitution and laws of the United States.'" *Id.* (quoting *Abel v. United States*, 362 U.S. 217, 226, 80 S.Ct. 683, 690, 4

L.Ed.2d 668 (1960)). Specifically, Utah Code Ann. § 77–22a–1 (1999) allows prosecutors to issue administrative subpoenas in controlled substance investigations only "under circumstances where it is clear that the subpoenaed information is not subject to a claim of protection under the Fourth, Fifth, or Sixth Amendment, United States Constitution, or a similar claim under Article I, Sec. 12 and Sec. 14, Utah Constitution." *Id.* § 77–22a–1(2) (1999). This requirement protects the recipient of the subpoena from having to take affirmative action to prevent the State from intruding on his, her, or its constitutionally protected rights.[7]

¶ 59 Unlike section 77–22a–1, section 76–10–917 does not provide any constitutional safeguards prior to issuance of the CID. Section 76–10–917 does allow a recipient of a CID to file a *petition to set aside* the CID based upon "any constitutional or other legal right or privilege of the petitioner." Utah Code Ann. § 76–10–917(7)(b)(i) (1999). However, section 76–10–917 does not contain any provision ensuring that, *prior to issuance*, the attorney general's intrusion upon the person's liberty is lawful. *See In re Criminal Investigation*, 754 P.2d at 665 (Stewart, J., dissenting) (stating "[e]xcept for grand jury subpoenas, the general rule is that until a criminal charge is formally made, the state bears the burden of first establishing that its intrusion upon a citizen's liberty is lawful" (citations omitted)).

The point is not trivial. There is a great difference between allowing the government to curtail personal liberty until a citizen obtains a court order commanding the government to cease and requiring the government to first justify its intrusion of personal liberty before it actually does so. *See State v. Grijalva*, 111 Ariz. 476, 533 P.2d 533 (1975) (requiring an initial court order). The point deals with a fundamental aspect of the relationship of citizens to the government.           .

---

6. Incredibly, the *Babbitt* court deemed evidence "sufficient," regardless of its accuracy. *Babbitt*, 581 P.2d at 692.

7. Article I, Section 12 of the Utah Constitution states that a person accused of a crime "shall not

be compelled to give evidence against himself" and, "[i]n no instance shall any accused person, before final judgment, be compelled to advance money or fees to secure the rights herein granted." Utah Const. art. I, § 12.

*Id.* at 664. Further, many people "will assume the [CID] is legally authorized and will comply with it, no matter how invasive it is" given the air of authority that the CID carries.[8] *Id.* Other persons may not be able to afford to petition the court to set aside the CID and will comply with the order even though they could lawfully refuse. Thus, in light of the possibility of criminal prosecution and lack of pre-issuance safeguards, I consider section 76–10–917, to the extent information obtained thereunder may be used in a criminal proceeding, to be unconstitutional on its face.[9] *See Abel,* 362 U.S. at 237, 80 S.Ct. 683 ("Searches for evidence of crime present situations demanding the greatest, not the least, restraint upon the Government's intrusion into privacy; although its protection is not limited to them, it was at these searches which the Fourth Amendment was primarily directed."); *see also Church of Scientology v. U.S.,* 506 U.S. 9, 13, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992) ("A person's interest in maintaining the privacy of his 'papers and effects' is of sufficient importance to merit constitutional protection.").

¶ 60 I also consider section 76–10–917 to be unconstitutional because it effectively allows the government to conduct a general search. Specifically, regardless of whether a person has engaged in illegal anticompetitive activi-

ties, "the attorney general may disclose testimony or documents obtained [through a CID] ... to (i) any grand jury; and (ii) officers or employees of federal or state law enforcement agencies." Utah Code Ann. § 76–10–917(8)(b) (1999); *see also id.* § 76–10–917(2)(a)(iii) (stating CID must state "that the documents, materials, or testimony in response to the demand may be used in a civil or criminal proceeding"). Thus, the attorney general may use a CID to search for evidence of crimes other than illegal anticompetitive activities. This is true even though the attorney general may have no reason to believe that other crimes have been committed. Therefore, the attorney general may use a CID to conduct a general search.[10]

¶ 61 The Fourth Amendment of the United States Constitution

protect[s] against all general searches. Since before the creation of our government, such searches have been deemed obnoxious to fundamental principles of liberty. They are denounced in the constitutions or statutes of every State in the Union. The need of protection against them is attested alike by history and present conditions. The Amendment is to be liberally construed and all owe the duty of

---

8. A CID is statutorily authorized, formally served and issued by the attorney general. *See* Utah Code Ann. § 76–10–917 (1999).

9. The majority cites *In re Criminal Investigation,* 754 P.2d at 642 (quoting *Donovan v. Lone Steer, Inc.,* 464 U.S. 408, 415, 104 S.Ct. 769, 773, 78 L.Ed.2d 567 (1984)) for the proposition that the Fourth Amendment requires only that the CID recipient have the opportunity to challenge a CID after it is issued. I consider the majority's reliance on these cases misplaced because, unlike section 76–10–917, the subpoenas at issue in both of these cases contained pre-issuance protections. First, the type of subpoena at issue in *In re Criminal Investigation,* contained the pre-issuance protection that "the overall investigation may be approved only after the district court has made an objective determination that 'good cause' has been shown." *Id.* at 643–44 (stating that "the only plausible reason for requiring a good cause showing is to limit the scope of the authorized investigation accordingly"). Moreover, the statute governing the type of subpoenas at issue in *In re Criminal Investigation* was subsequently amended to require that the prosecutor "apply to the district court for each subpoena."

Utah Code Ann. § 77–22–2(3)(b)(i) (2000). Second, the administrative subpoena at issue in *Donovan v. Lone Steer, Inc.* is governed by the safeguards provided under 18 U.S.C. § 6002 (2001). Specifically, section 6002 states that once a person refuses to testify or provide other information on the basis of his privilege against self-incrimination, "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in a criminal case." 18 U.S.C. § 6002 (2001). While this protection would not protect a corporation, such a distinction is irrelevant to my analysis because CIDs may be issued to natural persons.

10. Only after a CID recipient fails to comply or petitions the court to modify or set aside the CID must the attorney general demonstrate that the information demanded is relevant to the suspected antitrust violation. *See id.* § 76–10–917(7)(b)(ii). However, this requirement does not prevent the attorney general from searching through the demanded documents for evidence of other crimes regardless of whether these crimes were within the scope of the CID.

vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted.

*Go–Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931) (citations omitted); *see also State v. Anderson*, 701 P.2d 1099, 1104 (Utah 1985) (Stewart, J., concurring).[11] Consequently, section 76–10–917 violates the Fourth Amendment of the United States Constitution in that it allows the attorney general to conduct general searches. *Cf. Walling v. American Rolbal Corp.*, 135 F.2d 1003, 1005 (2d Cir.1943) ("It is true, of course, that the data sought by subpoena duces tecum must be relevant to the inquiry at hand and that the use of this power must at all times be closely confined to 'the rudimentary principles of justice.'") (quoting *Federal Trade Comm'n. v. Am. Tobacco Co.*, 264 U.S. 298, 307, 44 S.Ct. 336, 338, 68 L.Ed. 696 (1924)).

¶ 62 Finally, even if section 76–10–917 were constitutional, I would affirm the ruling of the trial court because I am not convinced that the trial court ruled incorrectly when it set aside the CID—especially in light of the fact that we afford the trial court a " 'measure of discretion.'" *Evans v. State*, 963 P.2d 177, 179 (Utah 1998) (citation omitted). Specifically, to withstand a petition to set aside a CID, the State must have " 'in its possession sufficient information to satisfy a judge that it is reasonable to believe that there has been a violation of the act.'" *Id.* at 182 (citation omitted). Further, this information must consist of "objective evidence." *Id.* at 183. In the present case, the State's information consisted solely of an affidavit from the attorney general's antitrust investigator. The trial court was clearly concerned with the sufficiency of the State's information as evidenced by the trial court's repeated questions regarding whether the State had more objective evidence.[12] Despite the trial court's concerns, the attorney general did not provide the court with any documents or other objective evidence supporting the CID.[13] Because the attorney general did not provide any evidence other than the affidavit of its investigator, I cannot conclude that the trial court's decision to set aside the CID was incorrect. *Cf. Evans*, 963 P.2d at 184 (ruling that trial court erred in concluding State failed to meet its burden where State presented court with documents as well as affidavit).

¶ 63 Accordingly, I would affirm the decision of the trial court.

---

**11.** Although decided under the Fourth Amendment of the United States Constitution, Article I, Section 14 of the Utah Constitution contains language identical to the Fourth Amendment. *Compare* U.S. Const. amend IV, *with* Utah Const. art. I, § 14.

**12.** For example, on several occasions the trial court asked the assistant attorney general whether he had documents to support allegations contained in the affidavit.

**13.** While the attorney general did claim to possess such information, it is not enough to merely possess the information. The attorney general must present enough objective evidence to satisfy the court that there is "reasonable cause to believe that there has been a violation of this act." Utah Code Ann. § 76–10–917(7)(b)(ii) (1999).