**2015 UT App 64**

## THE UTAH COURT OF APPEALS

MONICA CECILIA COOK,
Petitioner,

*v.*

DEPARTMENT OF COMMERCE,
DIVISION OF OCCUPATIONAL AND PROFESSIONAL
LICENSING, AND BOARD OF NURSING,
Respondents.

Opinion
No. 20130974-CA
Filed March 19, 2015

Original Proceeding in this Court

David S. Cook, Attorney for Petitioner

Sean D. Reyes and Nancy L. Kemp, Attorneys
for Respondents

JUDGE KATE A. TOOMEY authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

TOOMEY, Judge:

¶1   Monica Cecilia Cook challenges the Department of
Commerce's decision to revoke her Advanced Practice
Registered Nurse (APRN) license, revoke her license to prescribe
and administer controlled substances, and fine her $5,000 for
unprofessional conduct. We approve the decision as to the
unprofessional-conduct determination and the fine, but we set
aside the Department's revocation of her licenses.

BACKGROUND

¶2     In 2005, the National Certification Corporation (the NCC) certified Cook as a Woman's Health Care Nurse Practitioner. The same year, Cook applied to the Division of Occupational and Professional Licensing (DOPL) for an APRN license and a license to administer and prescribe controlled substances. In completing her application for licensure, Cook stated that her national certification would expire March 31, 2008, and attested that she had read and understood Utah's Nurse Practice Act Rule. By so attesting, Cook indicated her understanding that "disciplinary action may be taken against [her] license for unlawful or unprofessional conduct."

¶3     Between 2005 and 2012, Cook regularly took continuing medical education (CME) courses but failed to submit proof of her CME to the NCC to renew her national certification.[1] As a result, Cook's NCC certification expired on March 31, 2008. Although national certification was required for relicensing in Utah and her national certification had expired, in January 2010 and again in January 2012, Cook renewed her APRN license and her license to administer and prescribe controlled substances through DOPL's online renewal application.

¶4     In each online license renewal application, Cook reviewed and affirmed the following statements:

> I am qualified in all respects for the renewal or reinstatement of this license;

---

1. Cook is not required to submit CME certificates to DOPL to renew her APRN license or her license to administer and prescribe controlled substances, but she must retain those certificates in case of an audit.

> To the best of my knowledge, the information contained in this application is complete and correct, and is free of fraud, misrepresentation, or omission of material fact;
>
> . . .
>
> In accordance with Subsection R156-31b-303(3)(b) [of the Utah Administrative Code], you must have National Certification in your specialty area of practice . . . ;
>
> By selecting "Continue" you hereby certify that you have completed or will complete all renewal requirements . . . before the expiration or reinstatement of your current license; and
>
> Please note that false, misleading, or fraudulent submittal may result in loss of licensure, criminal prosecution or both and is subject to audit. Additionally, [DOPL] reserves the right to initiate action at any time against a licensee who did not meet the renewal/reinstatement requirements at the time the license was issued.

¶5 In November 2011, Cook contacted the NCC to inquire about the status of her national certification.[2] In early 2012, Cook's employment ended because she was not nationally certified. On April 2, 2012, Cook wrote a letter to the Board of

---

2. It is unclear from the record when Cook actually became aware that her national certification had expired.

Nursing (the Board)[3] relinquishing her APRN license and informing the Board that she had recently learned she had inadvertently allowed her NCC certification to expire, not realizing she needed to renew it. She wrote, "I understand that the Board of Nursing may assess me with a citation or fine for my situation. I am willing to pay any such reasonable penalty as I am at fault . . . ."

¶6 In June 2012, DOPL filed a Verified Petition and Notice of Agency Action, alleging that Cook had engaged in unprofessional conduct by falsely attesting that she was nationally certified when she renewed her APRN license. Cook filed an answer alleging that DOPL improperly delegated its duties to the NCC, violated her constitutional rights, failed to properly comply with its duties to notify her of the national certification requirement, and lacked the authority to fine her for unprofessional conduct. Additionally, the answer stated that Cook believed she had current national certification because she had taken the required CME courses.

¶7 Although Cook raised constitutional concerns during a telephonic prehearing conference, the Administrative Law Judge (ALJ) limited the issues to be heard by the Board to (1) whether Cook's actions constituted grounds for sanctioning her, (2) whether Cook's state of mind constituted a mitigating circumstance, and (3) what sanction, if any, should be imposed.

---

3. The Board undertakes the duties specified in Utah Code sections 58-1-202 and -203, which include recommending to DOPL the minimum standards for educational programs, qualifying a person for licensing or certification, and advising DOPL in its investigations. Utah Code Ann. § 58-31b-201 (LexisNexis 2012); *id.* §§ 58-1-202, -203.

¶8    Following a hearing, the Board made recommendations which the DOPL director later adopted. DOPL issued an order concluding that Cook had engaged in unprofessional conduct by allowing her national certification to expire and then submitting two applications attesting she was qualified in all respects for renewal of her APRN license. The order fined Cook $5,000 and revoked her APRN license and her license to prescribe and administer controlled substances. Thereafter, consistent with its normal business procedures, DOPL published its adverse action against Cook's license in two national databanks and in DOPL's disciplinary newsletter.

¶9    Cook requested agency review on April 15, 2013.[4] Additionally, on August 30, 2013, DOPL notified Cook that a conditional APRN license would be issued pending the outcome of agency review.[5] But in September 2013, after reviewing DOPL's decision to sanction Cook by revoking her licenses and fining her, the Department affirmed DOPL's Amended Order. The Department adopted the Board's findings as conclusive, including the following:

> [T]he requirements for renewing an NCC certification are taught and discussed in the

---

4. Cook first requested agency review on September 17, 2012, but DOPL filed a Motion for Additional Relief and a motion to remand for the limited purpose of reopening the record to add a more accurate and complete list of questions Cook answered in connection with her online renewal of her licenses. DOPL issued a new order adopting the Board's amended findings on March 15, 2013.

5. On August 23, 2012, DOPL granted Cook's application for a license as a registered nurse. Cook has also regained certification with the NCC, and now meets the APRN licensing requirements.

associated pre-certification education. Each individual who is awarded a certification is given a handbook that details the process for submitting a renewal application to the NCC. The NCC maintains a website where the process and requirements are posted for easy reference. In addition, the NCC sends each certification holder a renewal reminder, using the address of record, prior to the date of expiration . . . .

The Department also found that DOPL

properly met its obligations to send out renewal notices to [Cook]. [Cook] failed to establish that the sanction of revocation and a $5,000.00 fine was unreasonable or arbitrary or capricious. [Cook] received due process rights of notice and opportunity to be heard. Challenges to the constitutionality of a statute must be deferred to the Courts. [Cook] failed to properly preserve remaining issues for agency review. Finally, [Cook] has failed to establish any basis for her request for an apology from [DOPL] or payment for lost income.

Cook petitions this court for judicial review of the Department's order.

ISSUES ON REVIEW

¶10   The principal issue is whether there is substantial evidence that Cook renewed her APRN license by a false communication when she attested that (1) she was nationally certified in her specialty area of practice; (2) she met or would complete all of the APRN license renewal requirements; and (3)

to the best of her knowledge, all information in the application was complete and correct. Then, we must determine whether the Department abused its discretion by revoking Cook's licenses, fining her $5,000, and publishing the action it took against her.

ANALYSIS

I. Substantial Evidence Supports the Department's Finding That Cook Engaged in Unprofessional Conduct by Making a False Communication in Her License Renewal Applications.

¶11    "'Unprofessional conduct' means . . . practicing or attempting to practice an occupation or profession requiring licensure . . . by any form of action or communication which is false, misleading, deceptive, or fraudulent." Utah Code Ann. § 58-1-501(2)(h) (LexisNexis Supp. 2014). Cook first argues a "false" communication must be knowingly false. Second, she asserts that she did not engage in unprofessional conduct because, to the best of her knowledge, the statements she made in renewing her license were not false. The Department found, however, "[Cook's] intent is not relevant under Subsection 58-1-501(2)(h)" because a "[m]isrepresentation or a false statement . . . does not require the intent to deceive." (Citing *Christensen v. Board of Review*, 579 P.2d 335, 338 (Utah 1978) (Maughan, J., dissenting).)

¶12    When reviewing an agency decision,

> [t]he appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by . . . agency action . . . based upon a determination of fact . . . that is not supported by substantial evidence when viewed in light of the whole

> record before the court[,] . . . [or] the agency
> action is . . . otherwise arbitrary or capricious.

Utah Code Ann. § 63G-4-403(4)(g), (h)(iv) (LexisNexis 2014). But "[w]e review statutory interpretations by agencies for correctness, giving no deference to the agency's interpretation." *Harrington v. Industrial Comm'n*, 942 P.2d 961, 963 (Utah Ct. App. 1997) (citation and internal quotation marks omitted).

¶13    "The fact that the parties offer differing constructions of the statute, in and of itself, does not mean that the statute is 'ambiguous.'" *Derbidge v. Mutual Protective Ins. Co.*, 963 P.2d 788, 791 (Utah Ct. App. 1998). When the language of the statute is clear, "we do not look beyond the language's plain meaning to divine legislative intent." *Brixen & Christopher Architects, PC v. State*, 2001 UT App 210, ¶ 14, 29 P.3d 650 (citation and internal quotation marks omitted). Thus, we read the statutory language literally and "assume the legislature used each term advisedly," "unless it would result in an unreasonable or inoperable result." *State v. Sommerville*, 2013 UT App 40, ¶ 9, 297 P.3d 665 (citation and internal quotation marks omitted). "Utah courts have a 'long history of relying on dictionary definitions to determine plain meaning.'" *Brixen*, 2001 UT App 210, ¶ 14 (quoting *State v. Redd*, 1999 UT 108, ¶ 11, 992 P.2d 986).

¶14    Here, we focus on the word "false." "False" means "not corresponding to truth or reality." *Webster's Third New Int'l Dictionary* 819 (1993). Contrary to Cook's assertion, the plain meaning of the word gives no regard to a person's intent. What is false is simply "[u]ntrue" and "can be so by intent, by accident, or by mistake." *Black's Law Dictionary* 677 (9th ed. 2009). Accordingly, we must determine whether substantial evidence supports the Department's finding that Cook's statements were untrue.

¶15    The Department relied on the statements Cook made on two license renewal applications in deciding that she engaged in

unprofessional conduct. Cook attested in each application that: (1) she was nationally certified in her area of specialty; (2) she met the requirements for renewing her APRN license or would meet the requirements by the expiration of her current license; and (3) "to the best of [her] knowledge, the information contained in th[e] application [was] complete and correct . . . ."[6]

¶16 None of these statements accorded with the facts. Cook did not have national certification, inasmuch as her certification lapsed in 2008. The statements "I am qualified in all respects for the renewal . . . of this license" and "[I] certify that [I] have completed or will complete all renewal requirements" were untrue because national certification in the specialty area of practice is a requirement for license renewal.[7]

¶17 Finally, Cook's certification that "[t]o the best of my knowledge, the information contained in this application is complete and correct" was not true. While the phrase "to the best of my knowledge" may offer some refuge from penalties for inadvertent omissions and errors, Cook was aware that her

---

6. Because only the signature pages of Cook's online license renewal applications were available, DOPL presented a computer screen shot of another nurse's APRN license renewal application as evidence of the statements contained in the online application. Cook does not dispute the content of the applications she signed but argues that the other application is hearsay and consequently inadmissible. Because Cook failed to adequately brief this assertion with legal analysis or any support, we do not review this issue. *See* Utah R. App. P. 24(a)(9).

7. According to Utah Administrative Code R156-31b-303(3)(b), Cook was required to have current certification in her specialty area of practice. Utah Admin. Code R156-31b-303(3)(b).

license would expire in 2008, and she also stated she read and understood Utah's Nurse Practice Act Rule.

¶18    The license renewal application also advised "that false, misleading, or fraudulent submittal may result in loss of licensure, criminal prosecution or both and is subject to audit." This cautionary language would put a reasonable person on notice that the applicant should exercise care in confirming the accuracy of the information she provided. If nothing else, the language of the renewal application should have provoked inquiry or a simple investigation of the facts by Cook, but between 2008 and 2012, Cook failed to make sufficient inquiry into her national certification status or the recertification requirements. Instead, she believed she did not need to submit her CME hours to the NCC based on the erroneous assumption that the requirements imposed upon other types of healthcare professionals, such as physicians and physician assistants, applied to APRNs. In light of the whole record, substantial evidence supports the finding that Cook made false communications in each of two APRN license renewal applications. Therefore, we do not disturb the Department's finding that Cook engaged in unprofessional conduct.

  II. The Department's Decision to Fine Cook and Publish the
 Action Against Her Licenses Was Reasonable, But the Decision
 to Revoke Her Licenses Exceeds the Bounds of Reasonableness.

¶19    Based on the determination that Cook engaged in unprofessional conduct, the Department fined her $5,000, revoked her licenses, and published the action against her licenses in the national databanks and DOPL's disciplinary newsletter. Cook argues the Department's sanction decisions were an abuse of discretion because they do not constitute "a reasonable and probable deduction from the actual facts." (Internal quotation marks omitted.) (Citing *Tolman v. Salt Lake County Attorney*, 818 P.2d 23, 26 (Utah Ct. App. 1991).) Specifically, she argues the Department's sanctions were

"extremely punitive" especially considering she "has not been charged with any crime" and "voluntarily report[ed] the lapse of her NCC certification." The Department found that the fine and license revocations were well within DOPL's discretion and noted that federal law requires DOPL to report the action taken against Cook's licenses.

¶20    Utah Code section 58-1-401 authorizes DOPL to take disciplinary action against a license and vests it with discretion to select an appropriate sanction. We review an agency's discretionary decision for an "abuse of discretion to ensure that it falls within the bounds of reasonableness and rationality." *Murray v. Labor Comm'n*, 2013 UT 38, ¶ 32, 308 P.3d 461 (internal quotation marks omitted). "Reasonableness, in turn, is essentially a test for logic and completeness rather than the correctness of the decision." *Id*. Thus, we must determine whether Cook's unprofessional conduct reasonably warranted the sanction imposed. *Cf. Tolman*, 818 P.2d at 32. In other words, if this court determines that the facts support the Department's decision, it must affirm "unless it finds the sanction so clearly disproportionate to the charges as to amount to an abuse of the [Department's] discretion." *See id.* (citation and internal quotation marks omitted).

¶21    First, Cook argues the decision to fine her $5,000 was beyond the Department's statutory authority and an abuse of its discretion. Utah Code subsection 58-31b-503(6)(b)(i) subjects violators to a fine of "up to $10,000 per single violation" and Utah Administrative Code R156-31b-402(1)(h) imposes a fine between $500 to $10,000 for "dealing with the Division or Board through the use of fraud, forgery, intentional deception, misrepresentation, misstatement, or omission." *See* Utah Admin. Code R156-31b-402(1)(q) (allowing the imposition of a fine for "[p]racticing or attempting to practice the profession of nursing by any form of action or communication which is false, misleading, deceptive, or fraudulent"). The Department had the discretion to assess a fine that was considerably higher than the

amount imposed in this case. Moreover, it fined Cook for each time she submitted false communications to DOPL on the 2010 and 2012 APRN license renewal applications. The fine imposed against Cook was well within the statutory boundary, and not unreasonable on the record before us.

¶22 Second, Cook claims the Department abused its discretion by publishing her unprofessional conduct in (1) the national databanks, and (2) the DOPL disciplinary newsletter on September 1, 2012 and April 1, 2013. But federal law requires DOPL to report to the national databanks any "adverse action" taken against a health care practitioner, and therefore, reporting the revocation of Cook's licenses to the databanks was not an abuse of discretion. *See* 45 C.F.R. § 60.9(a)(1). Further, the Utah Code requires DOPL to promptly report any adverse actions against an APRN's license to the coordinated licensure information system. *See* Utah Code Ann. § 58-31d-102 art. VII, § 2 (LexisNexis 2012). Because it had taken adverse action against Cook's license, publishing the adverse action in a newsletter is reasonable and indeed was required by statute.

¶23 Finally, Cook argues that the Department abused its discretion in revoking her licenses. Utah Code section 58-1-401(1) states, "The division shall . . . act upon the license of a licensee who does not meet the qualifications for licensure under this title." Utah Code Ann. § 58-1-401(1) (LexisNexis Supp. 2014). Moreover, the "division may refuse to issue a license to an applicant and may refuse to renew or may revoke, suspend, restrict, place on probation, issue a public reprimand to, or otherwise act upon the license of a licensee for" engaging in unprofessional conduct. *Id.* § 58-1-401(2)(a). While the statute requires the Department to take action against Cook's license for her failure to maintain her qualifications, it provides for a range of possible sanctions without offering guidance as to which might be appropriate in a given situation. *See id.* § 58-1-401(1), (2).

¶24    To determine whether revoking Cook's license for making a false statement on a license renewal application is within the bounds of reasonableness and rationality, we review the sanctions in light of the Department's past disciplinary practices. *See Johnson-Bowles Co. v. Division of Sec. of the Dep't of Commerce*, 829 P.2d 101, 116–17 (Utah Ct. App. 1992). The Department has cited no cases—and our research has unearthed none—in which a professional's license was revoked for unintentionally making a false statement on a license renewal application. But the Department has disciplined professionals, including nurses, for unprofessional conduct in various other circumstances. These reported cases can be grouped into those which resulted in: (1) license revocation or (2) some other disciplinary action.

¶25    The cases in which the Department decided to revoke a professional license included egregious conduct, usually involving conduct that posed a danger or harm to others. For instance, professionals have had their licenses revoked for practicing under the influence of a controlled substance, molesting clients, gross incompetence, and theft.[8] In contrast, in

---

8. *See, e.g., Vance v. Fordham*, 671 P.2d 124, 125–26 (Utah 1983) (an osteopathic physician "utilize[d] methods and mechanisms totally foreign to the practice of medical doctors or osteopaths and [had] diagnostic abilities . . . founded upon questionable theory rather than scientific knowledge"); *Schlosser v. State*, 2004 UT App 2U, paras. 7–8 (a massage therapist molested clients); *Taylor v. Department of Commerce*, 952 P.2d 1090, 1092 (Utah Ct. App. 1998) (a veterinarian was grossly incompetent and grossly negligent); *Rogers v. Division of Real Estate of the Dep't of Bus. Regulations*, 790 P.2d 102, 104–05, 107 (Utah Ct. App. 1990) (real estate agent made a written agreement with a dying woman to liquidate her property, then failed to deliver any proceeds from sales to the woman or return the unsold property).

the cases in which the Department imposed something less than revocation, the professionals' unprofessional conduct posed less potential for harm, even though it sometimes involved outright dishonest conduct.[9]

¶26    Cook's case is more analogous to the second group of cases. For instance, in *Scientific Academy of Hair Design, Inc. v. Bowen*, the Department suspended an academy's license to operate a cosmetology school after its officer willfully falsified a document, issued false advertisements, and failed to comply with a previous order. 738 P.2d 242, 243 (Utah Ct. App. 1987). The academy claimed a certain person was an instructor at the school in its advertisements and an application for licensure when he was not. *Id.* at 245–46. It insisted the statements made in the advertisements and on its application were not willfully false, but a clear preponderance of evidence supported a determination that the academy knew there was no employment contract with this person. *Id.* at 246. Moreover, when the academy knew there would never be an employment contract

---

9. *See, e.g.*, *Salazar v. McGinn*, 499 P.2d 857, 858 (Utah 1972) (a barber's license suspended after his apprentice was caught practicing without supervision); *Jepson v. Division of Occupational & Prof'l Licensing*, 2005 UT App 316U, para. 2 (a nurse privately reprimanded for possessing controlled substances outside his responsibilities as a nurse and failing to produce a medication he purchased for a patient); *Johnson-Bowles Co. v. Division of Sec. of the Dep't of Commerce*, 829 P.2d 101, 115–16 (Utah Ct. App. 1992) (suspended a broker-dealer's registration for one year and imposed a two-year probation for dishonest and unethical activities); *Scientific Acad. of Hair Design, Inc. v. Bowen*, 738 P.2d 242, 243 (Utah Ct. App. 1987) (a cosmetology academy's license suspended for willfully falsifying a document, issuing false advertisements, and failing to comply with a previous order).

with this individual, it made no attempt to correct the application. *Id.*

¶27 In another case, *Johnson-Bowles Co. v. Division of Securities of the Department of Commerce*, state agency action was initiated against a broker-dealer after a federal district court had found that he had unlawfully traded stocks "as part of a fraudulent scheme and device to manipulate and artificially inflate the price of that stock." 829 P.2d 101, 104–05 (Utah Ct. App. 1992). The Department issued an order which restricted the broker from trading stocks. *Id.* at 105. When the broker-dealer subsequently purchased additional stocks, the Department suspended his registration for one year and imposed a two-year probationary period after it found he had engaged in "dishonest and unethical practices." *Id.* at 106 (internal quotation marks omitted). This court explained that the broker-dealer was not sanctioned for fraudulently transferring shares but for his dishonest and unethical conduct including illegally purchasing 397,900 shares of stock *after* receiving the Department's order. *Id.* at 114.

¶28 In this case, Cook engaged in unprofessional conduct by making a false statement on two APRN licensure renewal applications. But, unlike *Scientific Academy* and *Johnson-Bowles*, there is no evidence showing she intentionally made these untrue statements, and she did not engage in further unprofessional conduct after the Department's order.

¶29 Even if Cook's behavior involved unprofessional conduct that would warrant license revocation, it was unreasonable to not stay the revocation pending her recertification. In *Powell v. Department of Commerce*, DOPL only revoked Powell's Utah nursing license after she: (1) failed to report to the Board that her Arizona nursing license had been revoked because she tested positive for controlled substances and failed to submit to required drug evaluations; (2) violated the terms of two probation agreements; and (3) repeatedly failed to undergo required drug evaluations. 2012 UT App 83, ¶¶ 3–6, 276 P.3d

1143. Although the Board revoked Powell's license for unprofessional conduct, it stayed the revocation and gave her nearly three years to correct her unprofessional conduct. *Id.* It even offered Powell a second probation agreement after she violated and failed to comply with the first set of terms. *Id.* Here, DOPL revoked Cook's license immediately after determining she had engaged in unprofessional conduct. Unlike Powell, Cook voluntarily reported her lapse in national certification and did not engage in conduct that put her patients' welfare at risk. To the contrary, her supervisor stated, "I have never known [Cook] to breech [sic] her professional standards, to work outside of her scope of practice, intentionally misuse or abuse her position as a medical professional or misuse or abuse prescription medication or any other legal or illegal substance."

¶30  It is undisputed that aside from her lapse in NCC certification, Cook was otherwise qualified to be an APRN and to be licensed to prescribe and administer controlled substances. Moreover, by the time Cook notified the Board that her NCC certification had expired, Cook knew exactly what was required to renew it. Nevertheless, DOPL opted to apply the harshest punishment available under the statute without a stay or probationary period to give Cook the opportunity to correct the situation. Its decision to promptly revoke Cook's licenses, when compared to the Department's past disciplinary decisions, suggests she has engaged in especially egregious conduct, and it has prevented Cook from obtaining employment as an APRN. In light of the Department's past disciplinary decisions and the nature of Cook's unprofessional conduct, it was outside the bounds of reasonableness to revoke her licenses without staying the revocation pending recertification or first placing her on probation or suspension.

###  III.    Cook's Remaining Constitutional Issues Were Inadequately Briefed.

¶31    Cook raises three additional broad arguments which we decline to review because Cook has failed to carry her burden on appeal. Pursuant to rule 24 of the Utah Rules of Appellate Procedure, an adequately briefed argument must contain "the contentions and reasons . . . with respect to the issues presented . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9). "An adequately briefed argument must provide 'meaningful legal analysis.' A brief must go beyond providing conclusory statements and 'fully identify, analyze, and cite its legal arguments.' This analysis 'requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority.'" *West Jordan City v. Goodman*, 2006 UT 27, ¶ 29, 135 P.3d 874 (citations omitted).

¶32    First, Cook argues that Utah Code section 58-31b-305(3) and Utah Administrative Code R156-31b-303(3)(b)(i) are unconstitutional because they treat post-July 1, 1992 APRNs differently from pre-July 1, 1992 APRNs, licensed practical nurses, registered nurses, and physicians. Specifically, she argues the statute violates the equal protection guarantees of the Utah and United States constitutions because post-July 1, 1992 APRNs must obtain NCC certification, whereas pre-July 1, 1992 APRNs and other healthcare professionals do not. Although Cook cites the Utah Constitution, she provides no reasoned analysis based on relevant legal authority. Instead, her argument relies on an unsupported assertion that there is no reasonable basis for the NCC requirement.

¶33    Second, Cook argues the Department's sanctions violated her substantive and procedural due process rights under the Utah Constitution and Fourteenth Amendment to the United States Constitution. She contends that the $5,000 fine and publication of the action taken against her licenses were unjust

government penalties, defamation, and a violation of her liberty interest in reputation. Cook cites several cases and asks us to adopt the broad statements of the law articulated therein, but she fails to provide any real legal or factual analysis. Instead, she simply recites the facts in her case that support her position and offers a compilation of holdings from inapplicable case law. Moreover, she fails to analyze the facts within a constitutional framework that would help us determine whether her rights were violated.

¶34    Finally, she argues the Department improperly delegated its statutory authority to the NCC by requiring Cook to know the NCC's rules to maintain her license. Cook raises this issue almost in passing and fails to articulate a legal argument or provide any relevant support for her conclusory statements.

¶35    In sum, Cook has failed to meet her burden on appeal. Cook provides no reasoned analysis based on relevant legal authority, and she fails to analyze the applicable facts within a constitutional framework that would help us review these issues. *See* Utah R. App. P. 24(a)(9).


CONCLUSION

¶36    In light of the whole record, substantial evidence supports the finding that Cook made false communications in each of two APRN license renewal applications. Accordingly, the Department's decision to fine her $5,000 and publish the adverse action against Cook's license is not an abuse of discretion. But the decision to revoke Cook's licenses is an abuse of discretion because, given the Department's past reported disciplinary decisions and the nature of Cook's unprofessional conduct, it falls outside the bounds of reasonableness. Although the Department had the discretion to revoke her licenses, doing so is a draconian response to Cook's inadvertent false statement. Staying revocation or placing Cook on probation or suspension

is more consistent with past Department decisions reviewed by this court.

¶37    We do not disturb the Department's decision to fine Cook $5,000 and publish the action against her licenses for unprofessional conduct, but set aside the Department's revocation of her licenses, and direct it to fashion a remedy consistent with this opinion.

––––––––––