2018 UT App 27

# THE UTAH COURT OF APPEALS

IN THE MATTER OF EVAN O. KOLLER

KATHRYN PROUNIS,
Appellant,
*v.*
MARK KOLLER,
Appellee.

Opinion
No. 20160109-CA
Filed February 15, 2018

First District Court, Logan Department
The Honorable Brandon J. Maynard
No. 073100106

Matthew N. Evans and Matthew M. Cannon,
Attorneys for Appellant

James K. Tracy, Robert S. Tippett, James C.
Dunkelberger, and Trevor M. Crowley, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
KATE A. TOOMEY and DAVID N. MORTENSEN concurred.

ORME, Judge:

¶1 After several years of litigating with her siblings,
Appellant Kathryn Prounis[1] successfully moved to have herself

---

1. Two of Kathryn's siblings share their father's last name. Thus,
in the interests of clarity and treating the parties alike,
throughout this opinion we refer to Kathryn, her siblings, and
her father by their first names, with no disrespect intended by
the apparent informality.

appointed as permanent guardian of her ailing father, Evan O. Koller, and permanent co-conservator of his considerable estate. Upon his death, Kathryn moved for the first time to charge her father's estate for her services. Her siblings opposed her motion, arguing, among other things, that she was equitably estopped from claiming compensation due to her many representations made during and after her father's life that she would serve "on a *pro bono* basis." The district court agreed with Kathryn's siblings and denied the motion. Kathryn now appeals that decision. We affirm.[2]

BACKGROUND

¶2     This family dispute blossomed into litigation in October 2007, when Kathryn filed an objection to her siblings' petition to appoint a guardian and conservator for Evan. Altogether, Kathryn has five siblings: her three sisters are LuAnn, Kayleen, and Julie; her two brothers are Dan and Appellee Mark Koller.

¶3     Kathryn reached an agreement with her siblings in June 2008, stipulating to the appointment of both a professional guardian and professional conservator on the condition that she and Dan be appointed co-conservators. The district court then found Evan to be an incapacitated person and appointed Eldercare Consult, Inc. and Stagg Eldercare Services as guardian and conservator, respectively. Both companies resigned from their appointments within a year, however, citing excessive interference from the co-conservators.

¶4     Following the fiduciary companies' resignations, Julie and Kayleen petitioned the court to appoint an emergency temporary guardian for Evan. In their petition, they argued that the

_____

2. A separate appeal involving many of these same parties has been resolved by the court in a separate opinion issued today. *See In re Evan O. Koller Revocable Living Trust*, 2018 UT App 26.

guardian should be a professional "because there is presently no one with authority to provide health care directions to the in-home care providers or to make decisions regarding health and medical care." They further alleged that the in-home providers were "receiving conflicting directions from various children of [Evan]." Kathryn objected to her sisters' petition on the ground that the court "intended for the Co-Conservators to assume certain of the responsibilities that were performed by Evan Koller's previous Guardian." She further represented that, until the court reached a decision on the matter, she would be willing to serve as an interim guardian "indefinitely and without compensation."

¶5    The district court sided in this instance with Kathryn, appointing her as temporary guardian as well as temporary co-conservator with Dan. Soon after, in a motion joined by Dan, Kathryn urged the court to set aside the siblings' stipulation and make her appointments permanent, representing that she had "been diligently performing [her] duties . . . for no compensation."[3]

¶6    The court held a hearing in August 2009 on the issue of appointing a permanent guardian and conservator. At the hearing, Julie and Kayleen once again argued for the appointment of a professional fiduciary, maintaining that the appointment was necessary to ensure the siblings' in-fighting did not interfere with their father's care. Kathryn responded by arguing that a professional fiduciary would be an unjustifiable

---

3. In addition to this statement, Kathryn made several similar representations to the court prior to the hearing on her motion to be appointed permanent guardian and co-conservator. For instance, in April 2009, Kathryn filed a report on her activities as temporary guardian and co-conservator, wherein she highlighted the fact that she was saving Evan's estate a significant amount of money by serving on a "pro bono" basis.

drain on Evan's estate and that she "ha[d] been doing the guardianship voluntarily and ha[d] been saving [the estate] a substantial amount of money" by doing the work herself. Evan's attorney and Dan agreed with Kathryn, emphasizing that they, too, wished to avoid "depleting the estate" and stating that Kathryn "deserved a medal" for "dramatically reduc[ing] the drain on the estate." Finally, Mark did not object to Kathryn's receiving the appointments, but he did ask the court to appoint two other siblings as co-guardians and one additional co-conservator to counterbalance Kathryn's sway over Evan.

¶7     "Greatly influenced" by her representations that she would serve without compensation, the court granted Kathryn permanent guardianship over Evan and, with Dan, permanent co-conservatorship. Kathryn and Dan held these positions on an uninterrupted basis until Evan passed away in April 2014, a period of just under five years. Although Kathryn's siblings did not divest her of her appointments during Evan's life, it was not for lack of trying. On the contrary, her siblings filed numerous motions and objections alleging that Kathryn was mismanaging the assets of the estate and taking affirmative steps to isolate them from Evan.

¶8     Throughout her tenure as permanent guardian and co-conservator, Kathryn's siblings frequently expressed concern that she was paying herself and her attorney from the funds of the estate. Yet Kathryn adhered firmly to the position that she was working without compensation, insisting that any money she was taking from the estate was limited to reimbursement of her out-of-pocket expenditures on Evan's behalf. Consistent with these representations, Kathryn did not include a request for compensation in the final guardian's or conservators' reports upon Evan's death.

¶9     Dan, on the other hand, occasionally vacillated on the issue of compensation. At the hearing on the issue of appointing a permanent guardian and conservator, his counsel represented that, while serving as temporary co-conservator with Kathryn,

Dan had not been "depleting the estate." But at a February 2012 hearing held in connection with the co-conservators' annual accounting, Dan took the position that he had never agreed to forgo payment altogether; on the contrary, he intended to enter a request for "reasonable compensation . . . in the not too distant future." And indeed, Dan did include a request for compensation in the final conservators' report, which he and Kathryn jointly filed in October 2014. As none of the siblings opposed Dan's request, the court granted it.

¶10 Several months after the final guardian's and conservators' reports had been filed, Kathryn surprised her siblings with a motion for compensation, wherein she requested over $475,000 for the services she performed between March 2009 and April 2014. While LuAnn stipulated to Kathryn's request, Dan, Julie, Kayleen, and Mark all objected to it, maintaining, among other things, that Kathryn was estopped from making it due to her many representations that she would serve without compensation.[4] Kathryn filed a reply memorandum in which she largely ignored her siblings' estoppel argument, instead making several statutory arguments.[5] At no point did any party request an *evidentiary* hearing on the motion.

¶11 The district court held a hearing on Kathryn's motion on June 4, 2015. At the hearing, Kathryn maintained she had never taken the position that she did not expect to be compensated for

---

4. To be clear, the siblings argued for the application of the equitable estoppel doctrine. They did not raise the issue of *judicial* estoppel. *See Orvis v. Johnson*, 2008 UT 2, ¶ 11, 177 P.3d 600 (discussing elements of judicial estoppel).

5. She did not mention that the sum she was requesting as compensation for her services as co-conservator was more than four times the sum that Dan had requested.

her services at some point. Rather, she argued, the only reasonable interpretation of her previous representations is that she did not intend to seek compensation during Evan's life. She explained that, in postponing her request, her aim was to ensure that the estate had sufficient funds to provide for Evan's care while he lived. But the court was unconvinced. It found instead that Kathryn had "made numerous representations to the Court and the parties that she would serve as guardian and conservator without compensation," and, further, that her siblings had only supported her appointments because of these representations. Accordingly, it ruled that Kathryn was equitably estopped from seeking compensation for her services as guardian and co-conservator.

¶12    Following the court's ruling, Kathryn filed a motion to reconsider. The court denied her motion, explaining that Kathryn had "not cite[d] an applicable rule of civil procedure to support her motion" and that, in any case, her arguments were "substantively identical to those previously considered and rejected at the June 4, 2015 hearing." This appeal followed.

ISSUES

¶13    Kathryn raises four issues for our review. First, Kathryn argues that the district court erred in failing to hold an evidentiary hearing on the issue of equitable estoppel. Second, she argues that the district court erred in concluding she was equitably estopped from requesting compensation for her services as guardian and co-conservator. Third, she argues that the district court's decision to deny her compensation for her services was grounded in a misapplication of the Utah Uniform Probate Code. And fourth, she argues that the district court "improperly discriminate[d] against [her] by denying her any compensation while granting compensation to her brother."

ANALYSIS

## I. The Court's Failure to Hold an Evidentiary Hearing

¶14   We begin with Kathryn's contention that the district court erred in failing to hold an evidentiary hearing before it concluded that her request for compensation was barred by equitable estoppel. She urges us to review this issue de novo, although her argument as to why we should do so is short and conclusory. Regardless, we conclude that this issue was not preserved in the district court. While we sometimes review unpreserved issues for plain error, *see Thomas v. Mattena*, 2017 UT App 81, ¶¶ 9, 13, 397 P.3d 856, we will not do so if the appellant has not argued that the plain error doctrine or any other exception to the preservation rule applies, *see Marcroft v. Labor Comm'n*, 2015 UT App 174, ¶ 4, 356 P.3d 164. And Kathryn has not made such an argument here.

¶15   Kathryn maintains, "It is axiomatic that if there are disputed issues of material fact, then an evidentiary hearing (or trial) is necessary to resolve such disputes." She supports her position with three case citations, each involving an appeal from a summary judgment,[6] and almost nothing else. Altogether, she dedicates less than a page of argument to this issue in her opening brief. But we have no occasion to comment on the merits of her argument because she failed to raise it in a timely manner in the district court.

¶16   "[T]o preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968. "This requirement

---

6. In support of her position, Kathryn cites our decisions in *Bangerter v. Petty*, 2010 UT App 49, 228 P.3d 1250; *Bear River Mutual Insurance Co. v. Williams*, 2006 UT App 500, 153 P.3d 798; and *Davis v. Sperry*, 2012 UT App 278, 288 P.3d 26.

puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *438 Main Street v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. A trial court will not be deemed to have been given adequate notice of an asserted error unless three elements have been satisfied: "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (3) a party must introduce supporting evidence or relevant legal authority." *Badger v. Brooklyn Canal Co.*, 966 P.2d 844, 847 (Utah 1998) (citation and internal quotation marks omitted).

¶17    Kathryn does not dispute that she failed to request an evidentiary hearing in her motion for compensation or its supporting memoranda. Nevertheless, she contends that the issue was preserved because she urged the court to hold an evidentiary hearing in her motion to reconsider. But as the court stated in its order denying that motion, "[m]otions to reconsider are not recognized by the Utah Rules of Civil Procedure." *See Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615. Accordingly, as "trial courts are under no obligation to consider motions for reconsideration, any decision to address or not to address the merits of such a motion is highly discretionary." *Id.* Here, although the district court did issue a three-page memorandum decision resolving Kathryn's motion, it addressed other matters and declined to consider her request for an evidentiary hearing. Indeed, no mention of the request appears anywhere in the decision. Kathryn has little room to complain about this omission because it was she who failed to raise the issue "in a timely fashion," *see Badger*, 966 P.2d at 847 (citation and internal quotation marks omitted), that is, while the motion for compensation was being debated and considered and before it had been decided.

¶18    Because Kathryn failed to provide the district court with timely notice of a potential error, we conclude that the evidentiary hearing issue was not preserved for appeal. We therefore decline to consider it further.

## II. The Court's Equitable Estoppel Decision

¶19    Kathryn maintains that the district court's conclusion that she was equitably estopped from claiming compensation was "[p]remature" because "the facts on which [the court] base[d] its legal conclusion are disputed" and, in some instances, the court's findings "are not even supported" by the record. We conclude that the court did not err in reaching its decision.

¶20    When challenged, a district court's application of the equitable estoppel doctrine presents "a classic mixed question of fact and law." *Department of Human Services ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997). As a general proposition, when reviewing these questions we are "free to make an independent determination of the trial court's conclusions," but "the trial court's factual findings shall not be set aside on appeal unless clearly erroneous." *Id.* at 682 (citation and internal quotation marks omitted). However, not all mixed questions of fact and law are alike; our review will be more or less deferential depending on the nature of the particular mixed question before us. *See State v. Levin*, 2006 UT 50, ¶ 25, 144 P.3d 1096 (articulating three factors to aid in "selecting the appropriate standard of review for a mixed question of fact and law from the spectrum of possible levels of deference").

¶21    The Utah Supreme Court has had occasion to opine on the proper standard for reviewing a trial court's application of the equitable estoppel doctrine. In *Irizarry*, the Court observed that, when it comes to equitable estoppel, "[t]he variety of fact-intensive circumstances involved weighs heavily against lightly substituting [the judgment of the appellate court] for that of the trial court." 945 P.2d at 678. This is because a trial court's legal conclusions on an equitable estoppel issue are often bound up tightly with its deliberations on "observed 'facts' such as the witness's appearance and demeanor . . . that cannot be adequately reflected in the record available to appellate courts." *Id.* at 681–82 (citation and internal quotation marks omitted). Accordingly, the Court held that, when reviewing a

determination that the elements of equitable estoppel have been satisfied, appellate courts will "properly grant the trial court's decision a fair degree of deference." *Id.* at 678.

¶22 No evidentiary hearing was held by the district court, as previously explained. But because Kathryn did not timely request one, she waived not only her ability to claim that the district court erred in failing to hold such a hearing but also any challenge to the findings made by the district court on the basis of the parties' written submissions and the record otherwise before it. Accordingly, the district court's findings stand. Its findings relative to the estoppel issue are properly reviewed for clear error, and its ultimate decision on the issue is entitled to *Irizarry*'s "fair degree of deference." *Id.*

¶23 With the proper standard of review in mind, we turn our attention to Kathryn's claim that the court's equitable estoppel decision was erroneous. To successfully raise an equitable estoppel defense, a party must prove each of three elements:

> (i) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (ii) reasonable action or inaction by the other party taken or not taken on the basis of the first party's statement, admission, act, or failure to act; and (iii) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Nunley v. Westates Casing Services, Inc.*, 1999 UT 100, ¶ 34, 989 P.2d 1077 (citation omitted). Kathryn maintains that the court "erred in relying on its [f]indings of [f]act" when concluding that these elements were satisfied because its findings emanate from

evidence that remains "disputed."[7] Specifically, she argues that, in light of the court's failure to conduct an evidentiary hearing, there remain significant, unresolved factual disputes regarding "(1) the meaning of [Kathryn's] statements about compensation, (2) the alleged actions of the other parties in reliance of those statements, [and] (3) any injury to the other parties."[8]

---

7. In addition to challenging the court's findings relating to the elements of equitable estoppel, Kathryn also argues that there is insufficient evidence in the record to support the court's express finding that Dan opposed Kathryn's request for compensation. She asserts that Dan did join in his siblings' motion opposing her request, but, during oral argument, took the position that she should receive at least some compensation for her services but less than the entire amount she sought. Kathryn raises this argument in connection with an argument she makes in support of her third contention on appeal, which we address in more detail in Part III of this opinion. Briefly stated, the argument she makes is that, as a duly appointed conservator, Dan had authority under the Utah Uniform Probate Code to award appropriate compensation. However, in Part III, we conclude that the district court correctly ruled that Kathryn was estopped from requesting compensation for her services, regardless of what she might ordinarily have been entitled to under the Probate Code. Accordingly, the question of whether Dan did or did not support her compensation request ultimately has no bearing on our resolution of Kathryn's third issue. We therefore have no reason to address the question here.

8. In the section of her opening brief where she makes these contentions, Kathryn also maintains that "[t]here are disputed issues of fact concerning whether Dan made representations to the District Court about serving without compensation." However, such factual issues have no bearing on the threshold question of whether the elements of equitable estoppel were

(continued…)

¶24　Thus, Kathryn does not really contend that the court misunderstood the law of equitable estoppel or that it erred in applying the law to the facts.[9] Instead, her primary argument is that the court's factual findings were flawed. Had Kathryn preserved her claim that the district court erred in failing to hold an evidentiary hearing, her attack upon the court's findings might conceivably have carried the day. But since she did not, we are constrained to review those findings under the heavily deferential clear error standard. Upon doing so, we conclude that they were adequately supported by the record.

A.　Kathryn's Representations

¶25　Kathryn first argues that there remain "disputed issues of fact concerning the intent and meaning of [her] statements." In its order, the court supported its conclusion that the first element of equitable estoppel was satisfied with an express finding that Kathryn "made numerous representations to the [c]ourt and the parties that she would serve as guardian and conservator without compensation." Kathryn contends that much of the record would be equally consistent with an alternative finding that she represented that she would not be seeking compensation *during Evan's lifetime*. Because the court's finding is not against the clear weight of the record, we conclude that it was proper.

---

(…continued)
satisfied with respect to Kathryn. They are, however, relevant to our resolution of Kathryn's fourth issue on appeal, namely whether the court's application of the equitable estoppel doctrine to Kathryn was discriminatory in light of its failure to apply the doctrine to Dan. Accordingly, we will address this contention in Part IV.

9. To the extent Kathryn argues that the court erred in applying the law, we address her arguments in footnotes 10 and 11.

¶26    In support of her position, Kathryn points to the fact that the record is devoid of any express statement, from her or her attorney, that she would not be seeking compensation for her services upon Evan's passing. She also points to the fact that she included a "listing of hours spent" caring for Evan in her annual guardian's reports, which, she argues, is strong evidence that she intended to seek compensation in the future.

¶27    Kathryn has not convinced us that the district court's finding is against the clear weight of the evidence, i.e., the evidence such as it was in the absence of an evidentiary hearing. To begin with, Kathryn all but concedes that she made several representations that could reasonably be interpreted as meaning she did not expect to be paid for providing care to her father. Moreover, the arguments she advances in support of an alternative finding are unconvincing. As to her first point, the argument fails because it cuts both ways. While it may be true that Kathryn made no unambiguous statement that she *did not* intend to seek compensation after her father's death, it is equally true that, in the course of her many unqualified representations that she would be serving without compensation, she made no unambiguous statement that she *did* intend to seek such compensation. And as to her second point, we observe that the "listings" Kathryn included in each guardian's report hardly exhibit the level of detail that one would expect from a person who hopes to be paid for her time. On the contrary, in each annual report Kathryn included merely a single number representing the total hours she had spent caring for her father during the preceding year. Accordingly, we do not disturb the court's finding regarding Kathryn's representations.

B.    The Siblings' Reliance on Kathryn's Representations

¶28    Kathryn also argues that "[t]here are disputed issues of fact concerning whether reasonable action was taken in reliance of [Kathryn's] statements." The court reached its conclusion that the reliance element of equitable estoppel was satisfied after finding that, although Kathryn's siblings initially objected to her

appointments, they "subsequently supported her appointment based on her representation that she would act in [her] capacities 'without compensation' and 'pro bono.'" Kathryn asserts that the court's finding is unsupported by the record.[10] On the contrary, she argues, the record demonstrates that her siblings "consistently opposed [her] appointment and challenged her every step of the way." Upon granting the appropriate degree of deference to the court's finding, we conclude that the record adequately supports it.

¶29 We acknowledge that it is clear that Kathryn's efforts to acquire and, later, to perform the duties incident to her appointments were consistently met with stiff opposition from Julie and Kayleen, even after Kathryn had said she would forgo compensation. Nevertheless, the record contains little evidence that Kathryn's other siblings were raising complaints about her during her tenure as guardian and co-conservator. From this, we think the court could reasonably have inferred that Kathryn's siblings were holding their tongues in reliance on her representations that she was serving without compensation. Given that the court's factual determinations are entitled to our considerable deference, we conclude that there was a sufficient

---

10. Kathryn also maintains that, regardless of whether her siblings did in fact rely on her representations, as a matter of law they were precluded from relying on them because she owed her siblings no fiduciary duty. Rather, she argues, her "words and conduct about working pro bono were intended solely to benefit [Evan], with whom [she] had a fiduciary relationship." But Kathryn cites no authority for her proposed rule that one may not reasonably rely on the statement of another for equitable estoppel purposes unless that person is her fiduciary, a proposition that strikes us as counterintuitive. Because she also fails to articulate any reason why we should adopt such a rule, we decline to do so.

basis for its finding on the element of reliance in view of the record before it.

## C. Injury to the Siblings

¶30    Finally, Kathryn maintains that there remains a factual dispute as to whether her siblings would suffer injury if her request were approved because her "requested compensation is significantly lower than what would have been paid to professionals."[11] This contention may be dealt with in short order. The district court found that "the beneficiaries of the estate would be damaged by the reduction [of] the assets of the Estate if [Kathryn] were compensated." It is true that, in making this finding, the court did not attempt to calculate precisely how much money Evan's estate would have saved by paying Kathryn to care for her father instead of paying for professional care. But it did not need to do so. Regardless of what professionals may have charged, the beneficiaries' share of the estate, as it existed at the time of Evan's death, would necessarily have been diminished if Kathryn were permitted to take payment in any amount for her services. Because the record establishes that

---

11. Kathryn also argues that the district court's finding concerning injury to the siblings was erroneous because the "assets of the estate belonged to Evan . . . during his lifetime, and such assets did not, and have never, belonged to the siblings." But again, Kathryn cites no legal authority for the proposition she advances. And we are aware of no decision from any court in this jurisdiction holding that the loss of a contingent future interest does not amount to an injury for purposes of the equitable estoppel doctrine. Moreover, even if we were to adopt such a rule today, it is by no means clear that it would be dispositive here because Kathryn did not file her request for compensation until after her father had passed away, and his estate had passed—or was in the process of passing—to his children.

Kathryn sought a substantial amount for her services, we readily conclude that the court did not clearly err in making this finding.

¶31    For the foregoing reasons, we conclude that the court's factual findings in support of its equitable estoppel decision were not clearly erroneous. We therefore conclude that the court did not err in determining Kathryn was estopped from claiming compensation.

### III. The District Court's Compliance with the Probate Code

¶32    Kathryn's third contention is that the district court erred in denying her motion because she was entitled to compensation under the relevant provisions of the Uniform Probate Code, as adopted in Utah. To the extent the court's decision turned on an application of the Probate Code, its interpretation of the relevant statutory provisions "is a question of law that this court reviews for correctness." *Olson v. Utah Dep't of Health*, 2009 UT App 303, ¶ 9, 221 P.3d 863. But to the extent the court's decision was grounded instead in the doctrine of equitable estoppel, we grant its decision "a fair degree of deference." *Department of Human Services ex rel. Parker v. Irizarry*, 945 P.2d 676, 678 (Utah 1997). We conclude the court's decision was proper, notwithstanding that it was in apparent conflict with the Probate Code.

¶33    The argument Kathryn advances is straightforward. She begins by directing our attention to section 312 of the Probate Code, which provides that "[a]ny guardian . . . is entitled to receive reasonable sums for services . . . furnished to the ward *as agreed upon between the guardian and the conservator*." Utah Code. Ann. § 75-5-312(5) (LexisNexis Supp. 2017) (emphasis added).[12]

---

12. At the time Kathryn's motion for compensation was argued, the text of this section was codified elsewhere in the Probate Code. As the text remained unchanged when it was recodified, we refer to the most recent codification for the sake of convenience.

Next, she directs us to sections 414 and 424, which provide, respectively, that a "conservator . . . is entitled to reasonable compensation from the estate" and that a conservator "may act without court authorization or confirmation to . . . pay . . . compensation of the conservator." *Id.* §§ 75-5-414, -424(4)(t). She then reasons that, since her co-conservator, Dan, contested only the amount of her compensation, not whether she should be compensated at all, he therefore effectively gave his approval for her basic requests, although not the specific amounts. Accordingly, because both co-conservators agreed that she should receive at least some compensation for her services, Kathryn argues that the statutes she cites precluded the court from denying her motion for compensation outright.

¶34    We agree that, under ordinary circumstances, Kathryn would be entitled to compensation for her services. In fact, Kathryn's siblings agree on this point as well. But the circumstances of this case are not ordinary. Here the court determined that, based on Kathryn's repeated representations that she would not be taking the compensation to which she might otherwise be legally entitled, Kathryn was estopped from making a request for compensation at a later date. *See Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 19, 158 P.3d 1088 (noting that the equitable estoppel doctrine operates as a bar to the enforcement of an otherwise valid legal claim). We therefore conclude that, although the court's decision may have been contrary to the ordinary requirements of the Probate Code, it was not contrary to law in the broader sense.

IV. The Court's Disparate Treatment of Kathryn and Dan

¶35    Kathryn's final contention is that the district court "improperly discriminated against [her] by denying her compensation while granting compensation to her brother." As for the applicable standard of review, since Kathryn's fourth challenge is in essence a second attack upon the court's equitable estoppel decision, we review the decision according to the

standard for mixed questions of fact and law articulated in *Department of Human Services ex rel. Parker v. Irizarry*, 945 P.2d 676 (Utah 1997).[13] *See id.* at 678.

¶36 Although she does not raise an equal protection challenge, Kathryn does appear to suggest that the court's disparate treatment of her and Dan was the product of invidious discrimination. Thus, she urges us to decide, as a matter of law, that the court "failed to fashion an appropriate remedy" because "compensating a male co-conservator, while denying compensation to a female co-conservator who did substantially all the work, creates an unjust outcome from an equity perspective."[14] But we cannot grant Kathryn relief based on her pleas for equity alone. Because Kathryn does not articulate any legally cognizable ground for reversal, we conclude that she has failed to carry her burden of persuasion on appeal.

¶37 Rule 24 of the Utah Rules of Appellate Procedure places on the shoulders of the appellant the burden of persuading the reviewing court that an error has been made below. It provided,

---

13. Although Kathryn argues that we should review the court's decision for correctness, she supports her argument by citing *In re Adoption of Baby B.*, 2012 UT 35, 308 P.3d 382. In that case, the Utah Supreme Court observed that appellate courts "must be vigilant in [their] review of . . . mixed findings to ensure that they are based on correct legal principles." *Id.* ¶ 47. Thus, notwithstanding her argument, she calls our attention to authority recognizing that the issue she raises is a mixed question of fact and law, not a purely legal question.

14. This point was fleshed out a bit more at oral argument. Her counsel suggested that the district court's decision was a product of outdated societal norms, according to which daughters are expected to take care of their aging parents as a matter of course while deeming it extraordinary—to the point of meriting compensation—if a son does the same.

at the time Kathryn filed her brief, that an appellant's brief "shall contain the contentions and reasons" that support disturbing the judgment of the lower court, "with citations to the authorities . . . relied on." Utah R. App. P. 24(a)(9) (2016).[15] Furthermore, our Supreme Court has made clear that an appellant cannot carry her burden of persuasion unless she supports her arguments and contentions with "meaningful legal analysis." *Cook v. Department of Commerce*, 2015 UT App 64, ¶ 31, 347 P.3d 5 (citation and internal quotation marks omitted). An appellant's brief must "go beyond providing conclusory statements and fully identify, analyze, and cite its legal arguments." *Id.* (citation and internal quotation marks omitted).

¶38 Kathryn fails to persuade us that the district court's decision to deny compensation to her but not to her brother constituted reversible error because she has failed to "identify, analyze, and cite . . . legal arguments" in favor of her position.[16]

---

15. Rule 24 was amended and renumbered in 2017. Subsection (a)(9) was renumbered as subsection (a)(8) and now provides that an appellant's argument "must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8).

16. To the extent Kathryn attempts to advance a legal argument, her points are essentially irrelevant. For instance, citing authority from other jurisdictions for the proposition that trial courts have "inherent power" to award compensation to guardians, she argues that "the District Court had the power to exercise its discretion and award [Kathryn] compensation." But whether this is true has no bearing on the question of why the court treated her differently from Dan or whether such disparate treatment was legal. She also argues, without citing any authority, that "Utah law and public policy favors fairly compensating family caregivers of incapacitated adults." But again, her contention has

(continued…)

*See id.* (citation and internal quotation marks omitted). To support her claim that she has been treated unfairly, Kathryn attacks the district court's finding that Dan "never represented that he would not seek compensation for his services" as unsupported by the record. She maintains that, on the contrary, throughout the proceedings below Dan's "conduct and representations were consistent with" her own. We grant that, if Dan's representations during the proceedings below were in fact identical to Kathryn's, then the court's decision to treat him more favorably than his sister would arouse suspicion that gender bias played a part in the decision.

¶39     But the record does not support Kathryn's contention. It is true that, during argument at the hearing to appoint a permanent guardian and conservator, counsel for Dan represented that Dan had not been "depleting the estate" while serving as temporary co-conservator. However, at a hearing in February 2012—more than two years before he made his compensation request—Dan made it clear to his siblings and to the court that, whatever Kathryn's plans might be, he intended to seek compensation for his services in the future. And his earlier representation that he had not been "depleting the estate" is consistent with the position that he did intend to seek compensation, albeit at a later time and at a lower rate than what a professional fiduciary would charge. Finally, in considering the court's disparate treatment of Kathryn and Dan, we think it significant that the sum Kathryn requested was markedly larger than the sum Dan requested in the final conservators' report. Indeed, Kathryn's request for co-conservatorship fees alone was more than four times greater than the sum Dan sought for his services. For these reasons, we believe the record adequately supports the court's finding regarding Dan's representations.

---

(…continued)
nothing to do with the issue of the district court's disparate treatment of her and her brother.

CONCLUSION

¶40    For the foregoing reasons, we conclude that the district court did not err in denying Kathryn's motion for compensation. Accordingly, we affirm.

——————